JAMES F. REGAN

*v.*

MARY REGAN *et al.*

192    589
204    507

*Opinion filed October 24, 1901—Rehearing denied December 5, 1901.*

ACCOUNTING—*when complainant is entitled to an accounting.* Complainant in a bill to restrain the defendant, his mother, from interfering with his possession of land upon the ground of an alleged contract by which she had agreed to give the same to him, is entitled to an accounting, where the bill prays for partition and an accounting if the alleged contract is not proven, and the decree sustains the defendant's contention that no contract existed but that she and the complainant were tenants in common of the land, subject to her dower, except fifteen acres belonging to the complainant, and where the defendant has received all the rents from the premises.

APPEAL from the Circuit Court of Lake county; the Hon. C. H. DONNELLY, Judge, presiding.

BAILEY, HALL & SPUNNER, for appellant.

P. V. CASTLE, A. B. WILLIAMS, and BEN. M. SMITH, for appellees.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

On December 11, 1878, James Regan, of Lake county, died intestate, leaving Mary Regan, one of the appellees, his widow, and seven children, of whom James F. Regan, appellant, is one, as his only heirs-at-law. At the time of his death he owned the south-east quarter of the north-east quarter of section 24, township 43, range 9, and the north half of lot 2 of the north-west quarter of section 19, township 43, range 10, in Lake county, which descended to said heirs-at-law subject to the dower of the appellee Mary Regan, as widow. She owned the north-east quarter of the north-east quarter of said section 24, and all

the property was operated as one farm. The buildings were on the forty acres owned by the widow. Appellant was eighteen years of age at the time of his father's death, and he remained on the farm with his mother until March 1, 1886. He managed the outside work and the mother and one of his sisters did the housework. On March 1, 1886, they left the farm, and the mother, Mary Regan, rented it to other parties. During the time they occupied the farm they bought out the interests of the other heirs and received conveyances thereof. The interests of three of said heirs were deeded to appellant and the interests of the other three were conveyed to his mother, the appellee Mary Regan. They also bought fifteen acres from other parties and the deed was made to appellant. Appellant lived in Chicago and was married in 1894. They returned to the farm in March, 1899, and appellant, with his wife and mother, occupied the premises until the fall of that year, when difficulties arose between them, and the mother, Mary Regan, left the place and began proceedings to dispossess appellant of the farm. He then filed in the circuit court of Lake county his bill of complaint in this case, alleging that he and his mother entered into a contract by which they were to carry on the farm and pay off the indebtedness against his father's estate, and the running expenses, from the proceeds; that he was to manage and run the farm, make necessary improvements and provide his mother a suitable home and support and care while she lived, and that upon her death whatever interest she had in the farm was to become his property. He also alleged that he carried out the agreement on his part and made valuable and lasting improvements, and that they had bought out the other heirs, except one-seventh of forty acres then owned by his sister, Mary Farnsworth. He prayed for an injunction to restrain his mother, Mary Regan, from interfering with his possession, but if the court should hold the alleged contract for a conveyance not proven,

then for an accounting of the rents and a partition of the land. The appellees, Mary Regan and Mary Farnsworth, defendants to the bill, answered, denying the existence of any contract as alleged in the bill, and setting up the Statute of Frauds as a defense to such alleged contract. The cause was referred to the master in chancery, who took the testimony and reported that the alleged agreement had no existence, and that there was nothing due complainant and that he was not entitled to an accounting. The master also reported the respective interests of the parties in the land and the dower of the widow therein, and recommended that the prayer of the bill be granted so far as partition was concerned. The cause was heard on exceptions to the master's report, which was sustained and the exceptions overruled. A final decree was entered finding that the defendant Mary Regan was entitled to dower in the premises of which her husband, James Regan, was seized, and finding the interests of the other parties and decreeing a partition.

We are of the same opinion as the master and court, that there is no evidence of the alleged verbal contract of such clearness and certainty as to authorize a court to enforce it by enjoining the action at law for possession. Complainant's version of the alleged contract is, that after his father's death his mother said: "James, we are in debt. We have got an encumbrance of $1000 to pay. If you will only stay and be a good son and clear off this I will not bring anything with me and the place will be yours. You are to take care of me as long as I live. Be a good son and take care of me and pay off the debt and the farm will be yours;" to which he replied, "Mother, I will." If this could be regarded as a contract, it was not carried out according to its terms but was abandoned. After a few years they left the farm by common consent and did not stay there. Complainant did not take care of his mother or furnish her a home and support, as he alleged in his bill he was bound to do.

She received the rent of the place but lived elsewhere, and there is no claim or evidence that that arrangement was in performance of a contract. She denied having made the alleged contract, and testified that she never made any agreement with complainant whatever of the character claimed by him. There was evidence of some statements by her to other parties that complainant was to have the farm and that she called it his farm, but these are insufficient to prove a contract. The fact that deeds from the other heirs were taken, three to the mother and three to complainant, shows rather a joint undertaking in running the farm than a contract as alleged. The money made on the farm was paid over to the mother and the funds were managed by her. The interests of the other heirs were purchased with the proceeds of the farm, and they also bought fifteen acres, which was deeded to complainant. All this tends to show that complainant continued to live on the farm with his mother, receiving his living and the interests of three of the other heirs and the fifteen acres for his share or interest in the proceeds.

Again, it seems that complainant could not have understood that there was a binding contract made in 1879. He testified that after they had been away from the farm about thirteen years his mother was anxious to go back to the farm and wanted him to go, and that he then had a conversation with her, as follows: He said: "Mother, I am getting old and you are getting quite an old lady. I want to know if you have provided for the future for me." She replied: "James, what do you mean?" He then said: "Mother, I have spent the best part of my life on this farm and put it in repair. I am not coming back to it again and do the same repairing and keep it in repair for those people who have never done a bit of work." She replied: "Why, God bless you! I could not die in my bed without the place being yours. Come back and stay with me. There is enough money here in this pocket for you to stock the place the same as when you left it."

His inquiry of his mother whether she had provided for the future for him, and his statement that he had spent the best part of his life on the farm and was not coming back to it again to keep it in repair for people who had not done any work, is not consistent with an understanding that there was already a contract in force. This alleged conversation was also denied by the mother, Mary Regan, and, considering all the evidence, we think the decree was right in finding that there was no contract.

We need not consider the question whether improvements were made which would have taken a verbal contract out of the Statute of Frauds if there had been one. The improvements were such as good husbandry required, and were paid for out of the income of the farm during the period of the first occupation.

The decree denied to the complainant any right to an accounting for rents and profits for any period whatever. He and his mother, the defendant Mary Regan, were tenants in common of the land descended from James Regan, subject to her dower. She received the whole of the rents of the premises and he had title to fifteen acres not subject to her dower. We see no reason why he is not entitled to an accounting. The question whether any items of an account, when taken, will be barred by the Statute of Limitations, is not before us and is not decided. It is true, he testified that she did not owe him any money when they went back on the farm, but that he was entitled to the land itself under the contract. She disputed the existence of the contract and alleged a tenancy in common subject to her dower. She prevailed, and under her claim was obliged to account. He was praying for an accounting unless the land was decreed to him, and so far as we can see was entitled to it.

The decree is affirmed, except so far as it denies to complainant the right to an accounting for rents and profits received by the defendant Mary Regan, in which respect it is reversed, and the cause is remanded to the

192—38

circuit court for further proceedings with respect to such accounting not inconsistent with this opinion. The appellant will pay two-thirds of the costs of this appeal and appellees one-third.

*Reversed in part and remanded.*