SCHODDE v. TWIN FALLS LAND & WATER CO.

(Circuit Court of Appeals, Ninth Circuit. February 3, 1908.)

No. 1,380.

1. WATERS AND WATER COURSES—APPROPRIATION OF WATER FROM STREAM—RIGHT TO CURRENT AS APPURTENANCE.

An appropriator of a certain quantity of water from a stream does not acquire as an appurtenant to his water location the right to the current of the stream as a means of operating devices used by him to divert the water from the stream, nor is such current subject to appropriation as a water right under the Constitution and laws of Idaho.

2. SAME—MEANS OF DIVERTING WATER—IDAHO STATUTE.

Rev. St. Idaho 1887, § 3184, which provides that owners of lands adjacent to a stream shall "have the right to place in the channel of, or on the banks or margin of, the same rams or other machines for the purpose of raising the waters thereof to a level above the banks requisite for the flow thereof to and upon such adjacent lands," gives a mere license to use an appropriate method for raising the water, but the particular method or means adopted does not attach as an appurtenance to the appropriation of the water as against other appropriators from the same stream.

3. SAME—LIMITS TO RIGHT OF APPROPRIATION.

The right to appropriate water from a stream is not an unrestricted right, but must be exercised with regard to the rights of the public and other appropriators, and a single appropriator who has adopted as a means of raising water to his land water wheels operated by the current of the stream has no right of action because of the construction of a dam below him designed for the irrigation of a large area of land, the property of many owners, which destroys the current of the stream at the place of his location, and makes it necessary for him to adopt some other means of diverting the water off his land.

In Error to the Circuit Court of the United States for the District of Idaho.

The plaintiff in error was plaintiff in the court below in an action against the defendant in error to recover damages alleged to have been sustained by the plaintiff by reason of the defendant having constructed a dam across Snake river in Idaho, so as to back the water of the river up stream to and beyond plaintiff's premises, to the injury and damage of his water right in said stream.

Plaintiff's complaint contains three counts. Briefly stated, the cause of action as set out in the three counts of the complaint is as follows: Plaintiff is the owner of three tracts of land on the banks of Snake river, containing in the aggregate 429.96 acres. Two of these tracts, containing 263.96 acres, are on the south bank, and one tract of 160 acres is on the north bank. One of the tracts on the south bank is agricultural land, and the other is partly agricultural land and partly mining ground. The tract of land on the north bank is agricultural. In the year 1889 plaintiff's predecessors in interest, and in 1895 the plaintiff himself, appropriated certain quantities of water of the flow of Snake river for use on said lands. In the first count the quantity is stated in cubic feet per second; in the second and third counts the quantities are stated in miner's inches. The aggregate of water appropriated as alleged in the three counts is referred to in the briefs as 1,250 miner's inches. Soon after this water was appropriated the parties in interest erected water wheels in the river to lift the water to a sufficient height for distribution over the land. Nine of these wheels were erected opposite or near the tracts on the south side of the river, and two near the tract on the north side of the river. These wheels vary in height from 24 to 34 feet. The parties also constructed wing dams in the river adjoining or in front of the lands owned by them, for the purpose of confining the flow of the

water of the river and raising it at such points above the natural flow of the river, so that the current would drive the water wheels and cause them to revolve and carry the water in buckets attached to the wheels to a height where it would be emptied into flumes and distributed over the lands by ditches and used thereon to irrigate and cultivate the agricultural land and work the mining ground. It is not alleged in the complaint, but it is assumed that the river at this point runs between high banks and that the water is lifted by the wheels at least 20 feet before it is emptied into the flumes for distribution over plaintiff's lands. In the year 1903, while plaintiff was using the appropriated water of the river upon the described premises, the defendant commenced the construction of a dam across Snake river at a point about nine miles westerly from and below the lands of the plaintiff. The work was prosecuted on said dam until its completion in March, 1905. This dam is so constructed as to impound all the water of Snake river flowing at said point, and to raise the water about 40 feet in height. It is alleged that when defendant's dam was filled with water the water was turned into a canal known as the "Twin Falls canal," owned by the defendant, and located on the north side of the river; that this canal was constructed at a cost, as plaintiff is informed and believes, of $1,500,000, for the purpose of supplying water for irrigation and domestic purposes to the settlers on about 300,-000 acres of arable and arid lands situated below the dam; that for said lands and for a great number of people, being, as plaintiff is informed and believes, 5,000 in number, there is no other supply available for irrigation, stock, domestic, or manufacturing purposes except the water from said canal. It is alleged that by reason of this dam the waters of Snake river have been backed up from said dam and to and beyond plaintiff's premises and have destroyed the current in the river by means of which plaintiff's water wheels were driven and made to revolve and raise the water to the elevation required for distribution over plaintiff's lands. It is alleged that it is now impossible for plaintiff to so arrange or change his said dams or water wheels or flumes, or to build or construct other dams or water wheels or flumes that will raise any water whatever from said stream that can be used upon the plaintiff's lands, and by reason thereof plaintiff has not been able to irrigate said lands or any part thereof or to raise profitable crops thereon or to use the same as pasture lands, and will not in the future be able to irrigate said lands or to raise profitable crops or any crops thereon, as long as defendant's dam is maintained; that there is no other supply of water available for use upon said lands except the waters of Snake river; that by reason of the backing up of said water and stopping the plaintiff from using said water wheels to raise the waters of Snake river to and upon said lands and cutting off the water supply from plaintiff's lands he has been damaged in the aggregate sum of $56,650. In the first count of the complaint a separate and distinct cause of action is alleged in an averment that about 12 acres of plaintiff's land has been covered by the waters of Snake river backed up by defendant's dam, but the land is not described or its boundaries given, or any particulars stated so that the land can be identified or ascertained. To this cause of action defendant interposed a special demurrer on the ground of uncertainty and the improper joinder of two separate causes of action. This special demurrer appears to be admitted. The defendant also interposed a general demurrer on the ground that the facts stated in the complaint do not constitute a cause of action against the defendant as to either or any of said counts. The demurrer was sustained by the Circuit Court, and the plaintiff has brought the cause to this court upon a writ of error.

Hawley, Puckett & Hawley and W. E. Borah, for plaintiff in error.

E. B. Critchlow (Henderson, Pierce, Critchlow & Barrette and Parley L. Williams, of counsel), for defendant in error.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

MORROW, Circuit Judge (after stating the facts as above). The assignments of error present the single question whether the facts stat-

ed in the complaint constitute a cause of action against the defendant.

It is not denied that the plaintiff has the right by appropriation to divert 1,250 miner's inches of the waters of the Snake river, mainly for irrigation purposes, and it is not charged by plaintiff that this amount of water is not still in the river subject to his right of appropriation and diversion. His claim is that he cannot divert it by the means he first adopted for taking the waters from the river, and that the defendant by placing a dam across the river has deprived him of the right to the current of the river which prior to the erection of the dam rendered his means of diversion available. Is this current and the means adopted for the diversion of the appropriated water part of or attached to plaintiff's right of appropriation? It is contended on the part of the plaintiff that the current of the river is necessarily appurtenant to the water location and that the means of utilizing that current is attached as an appurtenance to the appropriation. We have not been referred to any case—and we know of none—where either of these propositions has been upheld.

The claim that the right to the current of the river is appurtenant to the water location is contrary to well-established principles of the common law governing such a relation. The water location was an appropriation and diversion of a certain quantity of the flowing water of the stream. The current of the river is part of the stream. There can be no right to the current of a stream as appurtenant to a diversion of the flowing waters of the stream. The two rights in such case would be equal and of the same character and quality, and one such right cannot be appurtenant to the other. Lord Coke says (Co. Litt. 121b): "A thing corporeal cannot properly be appurtenant to a thing corporeal nor a thing incorporeal to a thing incorporeal. According to this rule land cannot be appurtenant to land." Harris v. Elliott, 10 Pet. 25, 53, 9 L. Ed. 333; Leonard v. White, 7 Mass. 8, 5 Am. Dec. 19; Jackson v. Hathaway, 15 Johns. (N. Y.) 447, 8 Am. Dec. 263; Jones v. Johnston, 18 How. 150, 155, 15 L. Ed. 320. "It follows that things in their nature equal and of like character and grade can never be appurtenant to each other, for the common as well as the legal meaning of the word implies inferiority and dependence, so that a water ditch could never become appurtenant to another water ditch of like character and pass as an incident thereto, for the same reason that one farm will not pass as an appurtenance to another." Donnell v. Humphreys, 1 Mont. 518, 528. The reason for such a rule in the the present case is as forcible as in any of the cases cited. If the plaintiff were permitted to own the current of the stream as appurtenant to his right of appropriation and diversion, he would be able to add indefinitely to the water right he would control and own. There might be a great surplus of water in the stream at and above plaintiff's premises and an urgent demand for a portion of this surplus for beneficial uses, but if an appropriator above should divert a sufficient quantity to lower the current under plaintiff's water wheels so that they would not revolve, the plaintiff would have a cause of action to prevent such an appropriation. It is clear that in such a case the

policy of the state to reserve the waters of the flowing streams for the benefit of the public would be defeated.

But aside from this rule of common law, which we think denies the right of the appropriator to claim the current of the stream as appurtenant to his water location, the law of appropriation is itself opposed to such a claim. It is provided in the Constitution of the state of Idaho, art. 3, § 15, that:

"The right to divert and appropriate the unappropriated waters of any natural stream to beneficial uses shall never be denied."

In the Revised Statutes of Idaho of 1887, under the title "Water Rights and Irrigation," a method of procedure is provided for the appropriation and diversion of running water flowing in a river or stream for a useful or beneficial purpose. This procedure involves three distinct acts on the part of the appropriator: First, the person desiring to appropriate water must post a notice in writing in a conspicuous place at the point of intended diversion, stating therein (1) that he claims the water there flowing to the extent of (giving the number) inches measured under a 4-inch pressure, and accurately describing the point of diversion; (2) the purpose for which he claims it and the place of intended use; (3) the means by which he intends to divert it and the size of the flume, ditch, pipe, or aqueduct in which he intends to divert it—a copy of the notice must, within 10 days after it is posted, be recorded in the office of the recorder of the county in which it is posted (section 3160). Second, a diversion of the water within a reasonable time (sections 3157, 3158, 3161, 3162, 3163). Third, the actual application of the water to a useful and beneficial purpose. In Colorado, which like Idaho has adopted the law of appropriation as distinguished from the common-law doctrine of riparian rights, it has been held that there must be not only an actual diversion made with the intent to apply the water to beneficial use, but the water must be actually applied to such use. In Fort Morgan Land & Canal Co. v. South Platte Ditch Co., 18 Colo. 1, 30 Pac. 1032, 1033, 36 Am. St. Rep. 259, Chief Justice Hayt, in delivering the opinion of the court, said:

"From the first this court has recognized and emphasized the idea that a priority could only be legally acquired by the application of the water to some beneficial use. Hence there must be not only a diversion of the water from the natural stream, but an actual application of it to the soil, to constitute the constitutional appropriation recognized for irrigation."

It thus appears that the law of appropriation requires that the appropriator shall post a notice at the point of intended diversion, of the quantity of water claimed; he must make an actual diversion of the water and apply the water to a useful and beneficial purpose, which in the case of irrigation is an application of the water to the soil. In none of these requirements did plaintiff comply with the law in appropriating the current of the river. He did not notify the world that he made such a claim; he made no diversion of such water, and he did not apply it to the soil as required where the appropriation is for the purpose of irrigation. It is clear, therefore, that the current of the river was no part of plaintiff's water location, and that he has no cause of

action against the defendant for destroying this current. The claim of the plaintiff that the means of utilizing the current is attached as an appurtenance to the appropriation is likewise untenable. Section 3184 of the Revised Statutes of Idaho is referred to as supporting this claim. That section provides as follows:

"All persons, companies and corporations owning or having the possessory title or right to lands adjacent to any stream, have the right to place in the channel of, or upon the banks or margin of the same, rams or other machines for the purpose of raising the waters thereof to a level above the banks, requisite for the flow thereof to and upon such adjacent lands: and the right of way over and across the lands of others, for conducting said waters, may be acquired in the manner prescribed in the last two sections."

The permission here given is a mere license to the owner of lands adjacent to a stream to use any appropriate method for raising the water to a level above the banks for distribution upon such adjacent lands, but it is immaterial to the state what particular method is used. The landowner may use a ram, a pump, or a wheel, or he may raise the water by means of a ditch. And he may change from one method to another as the situation or circumstances may require. Charnock v. Higuerra, 111 Cal. 473, 476, 44 Pac. 171, 32 L. R. A. 190, 52 Am. St. Rep. 195. The method adopted cannot be said to have attached as appurtenant to the appropriation as against other appropriators of water from the same stream. Perhaps in a conveyance of land having upon it or in the adjacent stream a ram or other machine for raising water from the river such a machine would pass to the grantee of the lands under a deed containing the term "appurtenances," but that would be a very different proposition from the one now under consideration. We are, therefore, of opinion that the means of utilizing the current is not attached as appurtenant to the appropriation.

There is, furthermore, the general principle that the right of appropriation must be exercised with some regard to the rights of the public. It is not an unrestricted right. In Basey v. Gallagher, 20 Wall. 670, 683, 22 L. Ed. 452, the Supreme Court of the United States said:

"Water is diverted to propel machinery in flourmills and sawmills, and to irrigate land for cultivation, as well as to enable miners to work their mining claims; and in all such cases the right of the first appropriator, exercised within reasonable limits, is respected and enforced. We say within reasonable limits, for this right to water, like the right by prior occupancy to mining ground or agricultural land, is not unrestricted. It must be exercised with reference to the general condition of the country and the necessities of the people, and not so as to deprive a whole neighborhood or community of its use and vest an absolute monopoly in a single individual."

In Fitzpatrick v. Montgomery, 20 Mont. 181, 187, 50 Pac. 416, 417, 63 Am. St. Rep. 622, the Supreme Court of the state of Montana, after referring to what has been just quoted from Basey v. Gallagher, said:

"While any person is permitted to appropriate water for a useful purpose, it must be used with some regard for the rights of the public. The use of water in this state is declared by the Constitution to be a public use. Constitution, art. 3, § 15. It is easy to see that, if persons by appropriating the waters of the streams of the state became the absolute owners of the waters without restriction in the use and disposition thereof, such appropria-

tion and unconditional ownership would result in such a monopoly as to work disastrous consequences to the people of the state. The tendency and spirit of legislation and adjudication of the northwestern states and territories have been to prevent such a monopoly of the waters of this large section of the country, dependent so largely for prosperity upon an equitable, and, as far as practical, free, use of water by appropriation."

It follows that, in our opinion, the complaint does not state facts sufficient to constitute a cause of action against the defendant. The judgment of the Circuit Court is therefore affirmed.