(No. 5433. December 24, 1930.)

THE UNION CENTRAL LIFE INSURANCE COMPANY,
Appellant, v. MARTIN ALBRETHSEN et al., Cross-
Appellants, and BIG WOOD CANAL COMPANY, a
Corporation, Intervenor and Respondent.

[294 Pac. 842.]

McElroy & Chalfant and William A. Brodhead, for Appellant Union Central Life Insurance Co.

J. G. Hedrick, for Appellants Albert Albrethsen et ux.

Bissell & Bird, for Respondent Big Wood Canal Co.

KOELSCH, D. J.—This three-sided action involves the ownership and right of control of a certain underground drain ditch and the right to the use of about 150 inches of water flowing out of said drain ditch into a tributary of Silver Creek, and thence into said creek, all in Blaine county, Idaho.

In 1917 one Martin Albrethsen was the owner, so far as concerns us here, of two tracts of land in Blaine county, Idaho, one referred to as the upper ranch, the other as the Home Ranch. These lands are situate on and are part of a triangular territory comprising approximately 20,000 acres, and known as Bellevue Flats. The surface soil of this triangular territory is underlaid with coarse gravel, with here and there a streak of almost impervious clay, which retards or impedes, but does not prevent, the seepage of water in a southerly direction or course, from all sections of the triangle. Silver Creek is a natural stream in

the southerly end and near the base of the triangle, flowing in a southeasterly direction. Little Wood River is merely a continuation of Silver Creek. All waters from whatever source draining off the surface, or percolating through the porous subsoil of Bellevue Flat, find their way into Silver Creek. The waters of Silver Creek and Little Wood River have been completely appropriated for irrigation purposes, and at the time we speak of, the priorities of such appropriations had been adjudicated by decrees of the district court in and for the fourth judicial district, in the two cases of *Frost v. Alturas Water Company* and *Woodworth v. Anthony*.

Martin Albrethsen irrigated the upper ranch with waters out of Big Wood River by virtue of a decreed water right to 600 inches, and the Home Ranch by water from a pond, and also by water from Silver Creek, by virtue of a decreed right to the use of 280 inches out of said Silver Creek. In the year 1917 the said Martin Albrethsen commenced the construction of a drain ditch on the upper ranch. The primary purpose of this ditch was drainage, though said Martin Albrethsen also testified that he intended to use the drainage water made available by this ditch, as an auxiliary supply for the Home Ranch. When completed in 1920 this drain ditch was about one-half mile in length and emptied into Aker Creek, a small tributary of Silver Creek. Claiming that the water thus conducted by his drain ditch, which at times was as much as 200 inches, was "developed" water, Martin Albrethsen, by means of a ditch at a point on Silver Creek five or six miles below the junction of the drain ditch with Silver Creek, diverted and conducted an equal quantity of water on to his Home Ranch. On completion of the drain ditch, and on June 10, 1920, the said Martin Albrethsen commenced his action, under the provisions of C. S., sec. 7036, and on July 1, 1920, a judgment was therein entered, adjudging the said Martin Albrethsen owner of 250 inches of water so drained from the upper ranch by means of said drain ditch, and entitled to the "exclusive right to the use of the said waters so long as he maintains said drainage ditch

and drains the said water from said land, and that the priority of use of the said water is August 1, 1917.''

On July 22, 1921, Martin Albrethsen and his wife gave a mortgage on the Home Ranch to the defendant and cross-appellant Albert Albrethsen, which mortgage, after describing the lands thereunder, included therewith the water from the pond, the 280 inches of Silver Creek, and ''also one hundred fifty (150) inches of drainage water decreed to Martin Albrethsen in the case of *Martin Albrethsen v. Charles Brett, Watermaster,* dated July 1, 1920, with priority date of August 1, 1917.''

On July 7, 1922, Martin Albrethsen and his wife gave a mortgage to the appellant-plaintiff, The Union Central Life Insurance Company, on the upper ranch, including all ditch and water rights belonging to said land, or used on the same. In 1925 the Life Insurance Company foreclosed this mortgage, and after the proper proceedings the sheriff of Blaine county, on April 27, 1926, issued his deed for said property to the Life Insurance Company, who thereupon took possession and ever since has maintained possession of said upper ranch. It is by virtue of this foreclosure and sale that the Life Insurance Company claims ownership of the drain ditch as one of the appurtenances of said upper ranch.

In 1924 the appellant, Albert Albrethsen, also foreclosed his mortgage on the Home Ranch, under which foreclosure sheriff's deed was issued to him on March 6, 1926, and he thereupon entered upon said Home Ranch and ever since has maintained his possession thereof; and during the time he has been so in possession, and until prevented in 1926 by the tenant, R. E. Buttram, under the Union Central, of the upper ranch, the water-master of the district has measured out of Silver Creek to said Albert Albrethsen, a quantity of water equal to that flowing out of the drain ditch from time to time, and said Albert Albrethsen has used such water on the Home Ranch just as his predecessor Martin Albrethsen had done theretofore.

It is on this foreclosure, sale and sheriff's deed, and on such use of said water by himself and his predecessor, that

Albert Albrethsen bases his claim of ownership of said drain ditch of the right to the water flowing from and out of the same.

The drain ditch is about one-half mile in length. It averages about four feet in depth, with an inverted wooden box or flume, laid on its bottom, the open side down, and covered over with earth for its full length, except that near its upper end there is an opening, and another at about its middle. At these openings, and at its lower end, the flume is closed at the bottom, that is, it has four sides built of boards. At the lower end there is a weir or measuring gauge, and at the opening in the middle and at the one at the upper end, there are checks so that the water at those points can be dammed.

In 1926, when the two ranches for the first time since the construction of the drain ditch, were in separate ownership, the conflicting claim of ownership of the ditch brought about conflicting efforts at regulation of the water flowing therein, and resulted in this action, commenced by The Union Central Life Insurance Company, on June 5, 1926. Its complaint is in form an action to quiet title, with allegations on which to base its prayer for an injunction to restrain the defendants from interfering with plaintiff's control and regulation of the flow of water in said drain. Claiming rights adverse to those asserted by both the plaintiff and the defendants the Big Wood Canal Company was allowed to file its complaint in intervention.

The findings and decree uphold the contention of the intervenor that the water coming out of the drain ditch is part of the natural supply of the waters of Silver Creek, but declare the appellants Albert Albrethsen and wife owners of the drain ditch, and award to them a water right to 250 inches of water out of Silver Creek, with priority date of August 1, 1917, subject, however, to the right of the intervenor to its priority to 300 cubic feet per second of the waters of said creek.

The decree also declares the rights of both The Union Central Life Insurance Company, and the appellant Albrethsen,

in and to the water flowing in said drain ditch, subject to the rights of the intervenor, Big Wood Canal Company, and restrains them from making use of said water at any time when the Big Wood Canal Company is not receiving its 300 cubic feet per second, in full. From this decree, as a whole, The Union Central Life Insurance Company has appealed, while the defendants Albrethsen and wife, have appealed only from those provisions of the decree which adjudge their rights to the use of water from Silver Creek, subject to the rights of the Big Wood Canal Company.

The decisive point in this case, and it seems to us, the key to the solution of all other questions in the case, is the answer to the question: Was the water flowing in the drain ditch at the time such drain ditch was completed, subject to appropriation; that is, is it percolating or private water, so called to distinguish it from water by the statutes of this state made subject to appropriation?

Both appellants, that is, The Union Central Life Insurance Company and Albert Albrethsen and wife, contend that it is such private, percolating water, and that when Martin Albrethsen constructed the drain ditch on the upper ranch, he ''developed'' water which had not theretofore been appropriated by anyone, and could not be appropriated by anyone other than himself because it was his property by virtue of his ownership of the soil out of which the same was drained. And said appellants cite and apparently rely upon the cases of *King v. Chamberlin,* 20 Ida. 504, 118 Pac. 1099, and *Public Utilities Com. v. Natatorium Co.,* 36 Ida. 287, 211 Pac. 533.

In the King case, the land owner, by means of dams and embankments, had collected surface and flood waters, coming entirely from seasonal rains and melting snows, and not from any stream or spring, into a lake wholly upon his own land. It was, in fact, an artificial lake not fed by any natural inlet of water, subterranean or surface, but wholly by surface water coming from irregular precipitations from the sky during fall, winter and spring. In the Natatorium case, this court in its opinion specifically says that ''there is suffi-

cient evidence to justify the conclusion that no natural springs, streams and subterranean streams are cut off or interfered with by reason of the sinking of the wells and the gathering of the water at the depth found, into pipes, or by reason of the use of pumps for the purpose of increasing the flow. This being percolating or seepage water merely, rising out of the earth, without an outlet through any definite channel, and no part of any natural spring or stream, or any subterranean stream or flow, was not subject to appropriation, except by the owner of the fee. It was the property of the owner of the land upon which it stood, and under the well recognized doctrine that percolating water existing in the earth belongs to the soil as a part of the realty, it may be used and controlled to the same extent by the owner of the land as the land itself.''

It further appears from the statement of facts in that case, that if any of the water there in question, which is natural hot water, ever found its way by or through natural causes to the surface of the earth, it was but an inconsequential quantity compared to that thereafter developed by wells and by artificial pumping. But, in the case at bar, the trial court found and we think its finding in this regard is sustained by the weight of the evidence, ''That said gravel flats, upon which the land of the plaintiff and defendant is located is in truth the natural ground water storage basin supplying the flow of Silver Creek during the irrigation season, and that the waters so stored in said gravel flat from the snows of winter and rains of summer are in truth and in fact the sources of the waters of Silver Creek, and that said waters so naturally stored in said gravel flat have a well defined current and movement on each side of Silver Creek to the channel of Silver Creek, and that the digging of drains and cutting off of the natural surface and underground seepage and flowage into Silver Creek naturally seeping and flowing into Silver Creek and furnishing the supply of water thereof, diminishes the amount (sic) of water flowing in Silver Creek and available for beneficial use to the in-

tervener and other decreed users of the waters of Silver Creek.''

In the Natatorium case, also, the majority opinion is based upon the assumption that the water there involved underlay only the land owned by the company, that is, a single owner. In the instant case the conclusion is inescapable that the water flowing out of the drain ditch comes, not only out of the gravel underlying the land at that time owned by Martin Albrethsen, but more or less from the gravel underlying all of the Bellevue Flats. Thus we have here the clearest distinction between the character and sources of the waters involved here, from those involved in the King, and the Natatorium cases. We therefore hold with the trial court that the water flowing in the drain constructed by Martin Albrethsen was public water, prior to the construction of said drain, subject to appropriation, and that it was tributary to, and part of the source of supply of, Silver Creek, and so was included in the adjudication made of the waters of Silver Creek by the judgments in the cases of *Frost v. Alturas Water Co.* and *Woodworth v. Anthony.* (*Josslyn v. Daly*, 15 Ida. 137, 96 Pac. 568; *LeQuime v. Chambers*, 15 Ida. 405, 98 Pac. 415, 21 L. R. A., N. S., 76; *Bower v. Moorman*, 27 Ida. 162, Ann. Cas. 1917C, 99, 147 Pac. 496.)

The trial court, however, after finding ''that by the construction of the drain ditches aforesaid, the said Martin Albrethsen developed no water and did not augment the natural flow of Silver Creek, but merely conveyed thereto through artificial channels water which theretofore flowed into Silver Creek and was a part and portion of the natural flow thereof''; also found ''that said drainage ditch constituted and became an integral part of said defendant's (Martin Albrethsen) diversion works, and he predicated his right by diversion upon such construction.''

Had this ditch augmented the flow of water in Silver Creek; had it added water to that creek which before was not flowing therein, and the said Albrethsens had then rediverted said added water by a ditch lower down on the stream

it would, as a matter of course be apparent that both the inlet as well as the outlet ditch, would be parts of his system. But, when the inlet ditch does not augment the water flowing in the stream, as the court here affirmatively found, it is difficult to understand how the drain ditch could become an integral part of the diversion system. We are constrained to hold that it did not; and for the same reason we further hold that it did not in that way become an appurtenance to the land upon which the water claimed to come from the ditch was used. Did it become such appurtenance to the land last referred to, in any other way?

In the same finding (No. 17) the court says: "That on June 22, 1921, the said Martin Albrethsen, sold and conveyed all of his right, title and interest in and to the said drainage ditch and water to the defendant Albert Albrethsen, and that the said defendant, Albert Albrethsen, has been the owner and entitled to the possession of the same since that time."

Undoubtedly the court bases this finding upon the mortgage given by Martin Albrethsen to Albert Albrethsen, and the date June 22, 1921, is an error, and should be July 22, 1921, the date of the mortgage, for there is no evidence in the record of any conveyance under date of June 22, 1921. But this mortgage does not refer to the drain ditch, directly or by inference, the description therein being confined to the water, thus: "Also 150 inches of drainage water decreed to Martin Albrethsen in the case of *Martin Albrethsen v. Charles Brett, Watermaster,* dated July 1, 1920, with priority date of August 1, 1917."

Nor does the decree in the case of *Albrethsen v. Brett, Watermaster,* refer to the drain ditch as being therewith included; it describes the water drained from the E. ½ of sec. 8, Tp. 1, S., R. 19 E., B. M., and "that the plaintiff (Martin Albrethsen) has the exclusive right to the use of said water as long as he maintains the said drainage ditches and drains the said water from the said land."

This is far from saying that the drain ditch is an appurtenance to any land, particularly not that it is an

appurtenance to the land on which the water coming out of it was to be used. Moreover, the trial court found, and by its decree determined, that the judgment in the case of *Albrethsen v. Brett, Watermaster,* is void; and we think it properly and correctly so decided. That action was brought under the provisions of C. S., sec. 7036, and was purely a statutory action. The trial court found that it was not brought against the proper party, in that said Brett was not the water-master of the district, but was merely deputy water-master. The judgment-roll of the case shows other noncompliances with the requirements of the statute. It shows that the judgment was entered before the expiration of the time of notice of the pendency of the action, and it affirmatively shows that the court did not have jurisdiction of the subject matter of the action. The statute does not confer jurisdiction to enter a summary decree adjudicating the right to use water claimed to have been developed and not a part of the natural and public waters of the state. It is a statute conferring special jurisdiction in certain designated cases.

"When a court of general jurisdiction has special and summary powers wholly derived from statute, and not according to the course of the common law, and which do not belong to it as a court of general jurisdiction, its judgments are regarded and treated as those of courts of limited and special jurisdiction, and everything necessary to give jurisdiction must appear by the record." (*Wright v. Atwood,* 33 Ida. 455, 195 Pac. 195; 7 R. C. L. 1032.)

"Where judicial tribunals have no jurisdiction of the subject matter on which they assume to act, their proceedings are absolutely void in the strictest sense of the term." (7 R. C. L. 1042.)

The statute under consideration in itself recognizes the principles of law we have just discussed in that it makes a decree thereunder merely *prima facie* evidence, and subject to collateral attack. The judgment being void, is a mere nullity, and is not binding on anyone, and does not affect the rights of anyone, or raise an estoppel against

anyone. (34 C. J. 509; see, also, *Helms v. Chadbourne*, 45 Wis. 60.) The drain ditch, therefore, did not become an appurtenance to Albert Albrethsen's land by virtue of the judgment in *Albrethsen v. Brett, Watermaster*. The record of the present case shows a further reason why the contention of the appellant Albert Albrethsen that he is the owner of the drain ditch, cannot be maintained.

It appears that Martin Albrethsen did not make any reservation of the drain ditch in his mortgage to The Union Central Life Insurance Company on the upper ranch. And, as the judgment in *Albrethsen v. Brett, Watermaster*, being void, did not impart notice to the Life Insurance Company, nor estop it, it follows that the said mortgage passed all easements and appurtenances at the time belonging to said lands. (C. S., sec. 5375; *Koon v. Empey*, 40 Ida. 6, 231 Pac. 1097; *Ray v. Nally*, (Ky.) 89 S. W. 486; *Peters v. Worth*, 164 Mo. 431, 64 S. W. 490.)

We therefore conclude that Albert Albrethsen is not the owner of the drain ditch in question, but that the same is an appurtenance to the land owned by The Union Central Life Insurance Company, and that The Union Central Life Insurance Company may use the water flowing in this ditch, since it is conceded by respondent that such use in no material way interferes with the ultimate entrance of such water into Silver Creek, and in no way prejudices the intervenor.

It remains to examine the finding and decree of the trial court awarding to said Albert Albrethsen the right to the use of 250 inches of water out of Silver Creek, with priority date of August 1, 1917, subject, however, to the right of Big Wood Canal to 300 cubic feet per second of said water.

The trial court found as a fact, and we have approved such finding, that the water flowing out of the drain ditch constructed by Martin Albrethsen was part of the natural supply of water in Silver Creek; and, as herein already mentioned the record shows that the waters of Silver Creek had theretofore been appropriated, and adjudi-

cation of priorities established by the decrees in the two cases of *Frost v. Alturas Water Company* and *Woodworth v. Anthony*. It follows that the use by Martin Albrethsen of the water out of the drain ditch, was not an original appropriation, and he could not and did not by his mortgage convey any greater right than he had, to the appellant Albert Albrethsen. But the latter, in his cross-complaint pleads adverse possession by himself and his predecessor of such water right and adverse use of said water, for a period of over five years. The trial court, in effect, found against this contention for it made its award to Albert Albrethsen of 250 inches of the water of Silver Creek, subject to the right of the intervenor, Big Wood Canal Company and other decreed users of water out of Silver Creek, and there was sufficient evidence to sustain this finding.

The trial court's denial of appellant Albert Albrethsen's ownership of the water right by adverse possession, is therefore hereby approved.

However, the decree is reversed and the cause remanded with instructions to the trial court to enter a decree in conformity with this opinion.

The appellant, The Union Central Life Insurance Company is awarded its costs to be assessed against the appellants Albert Albrethsen and wife; the respondent Big Wood Canal Company is awarded its costs to be assessed equally against the appellants The Union Central Life Insurance Company, and said Albert Albrethsen and wife.

Givens, C. J., and Lee, Varian and McNaughton, JJ., concur.

Petitions for rehearing denied.