(No. 6009.   March 12, 1935.)

WASHINGTON COUNTY IRRIGATION DISTRICT, Appellant, v. W. E. TALBOY, Water Master of Water District No. 41 of the State of Idaho; THE WEISER IRRIGATION DISTRICT, a Municipal Corporation, and the CRANE CREEK RESERVOIR ADMINISTRATION BOARD, an Association Composed of Five Members, One Elected by the Said Weiser Irrigation District, One Elected by the West Idaho Power Company, a Corporation, One Elected by the Weiser Bench Irrigation Company, a Corporation, and Two Elected by the Washington County Irrigation District, Respondents.

[43 Pac. (2d) 943.]

George Donart, Edwin Snow and J. W. Galloway, for Appellant.

Ed. R. Coulter and Frank T. Wyman, for Respondents.

AILSHIE, J.—In 1910 the Crane Creek Irrigation Land & Power Company was organized for the purpose of building and operating a reservoir. In August of the same year the Power Company entered into a contract with Crane Creek Irrigation District and Sunnyside Irrigation District and others under which that company agreed to construct the reservoir and to sell to the two districts a portion of the stored waters. In 1910–11 the reservoir was partially completed to a capacity of about 15,000 acre-feet; later it was increased to 70,000 acre-feet. No further work was done until 1920. By that time the two irrigation districts (Crane Creek and Sunnyside) were bankrupt and no longer functioning. A contract for reorganization was entered into April 17, 1920, whereby it was contemplated that the two districts be dissolved and individual mortgages be given by

the respective land owners for their water rights. A new contract under date of February 21, 1921, was entered into providing for the voting of new bond issues for $500,000, the proceeds to be used in lieu of the proposed mortgages. The contract contained further provisions under which there was sold to the Weiser Irrigation District an interest in the reservoir sufficient to impound 10,000 acre-feet (subsequently reduced to 8,400 acre-feet). The bonds were voted and on April 4, 1922, a contract was entered into which was subsequently ratified and confirmed by a decree of the district court.

A further agreement was entered into on April 18, 1923, which is the final contract between the parties. Much stress is placed on this contract.

Appellant is the successor in interest of the Sunnyside Irrigation District and the Crane Creek Irrigation District. By the contract dated April 18, 1923, plaintiff's grantors acquired an interest in the Crane Creek Reservoir and likewise an interest in the water right from which the reservoir was supplied, to the extent of 33,000 acre-feet for irrigation and domestic uses. Paragraph three of the contract above referred to reads as follows:

"3. It is expressly understood and agreed between all the parties hereto that the parties of the first part own and hold an undivided interest in said Crane Creek Reservoir and said water rights to the extent necessary to enable said parties of the first part and their successors to impound annually in said reservoir and use (subject to the conditions hereinafter set forth) 33,000 acre feet of water for the irrigation of and domestic and stock use upon the lands within the present boundaries of said Sunnyside Irrigation District and said Crane Creek Irrigation District, it being expressly covenanted and agreed that said waters so reserved shall be appurtenant to said lands and no others and to be used only for the irrigation of said lands and domestic and stock use thereon."

By the same contract (April 18, 1923) the Weiser Irrigation District acquired an interest in the Crane Creek Reser-

voir and a like interest in the water right supplying the same to the extent of 8,400 acre-feet; and the Weiser Bench Irrigation Company an interest in the reservoir and a like interest in the water right supplying the same to the extent of 4,000 acre-feet. In 1926 a large flume conveying appellant's share of the water from Crane Creek was destroyed and since that time part of the land within appellant district has not been irrigated from any source and appellant's corresponding amount of the water stored has not been used by it.

The amount of storage in the Crane Creek Reservoir for the years 1928, 1929, 1930 and 1931 was as follows:

| 1928 | 1929 | 1930 | 1931 |
|------|------|------|------|
| 16,760 acre-ft. | 23,025 acre-ft. | 32,690 acre-ft. | 42,125 acre-ft. |

The quantity of water used by plaintiff and the Weiser Irrigation District and the Weiser Bench Irrigation Company for the same years was as follows:

| | 1928 | 1929 | 1930 | 1931 |
|------|------|------|------|------|
| Wash. Co. Irr. Dist. | 3,470 acre-ft. | 5,345 acre-ft. | 4,950 acre-ft. | 5,660 acre-ft. |
| Weiser Irr. District | 9,010 | 12,525 | 11,820 | 15,630 |
| Weiser Bench Irr. Co. | 1,930 | 2,500 | 2,200 | 3,120 |

While appellant's carrying canal and flume was out of condition for carrying water the Weiser Irrigation District diverted and distributed to its water users in excess of the amount to which it was entitled for 1928, 6,348 acre-feet; 1929, 8,717 acre-feet; 1930, 5,063 acre-feet; and 1931, 7,208 acre-feet. Of this total of 27,336 acre-feet diverted and used during the four years, 26,410 acre-feet was taken from appellant's appropriation .and share of the stored waters.

The present action was instituted by appellant to recover from the respondents the reasonable value of water so diverted and used for the years 1928, 1929, 1930 and 1931. By the notice of appeal herein all the defendants are made respondents and counsel for defendants seem to appear for all of them on this appeal. The real contest, however, is

waged between the appellant and the respondent Weiser Irrigation District. We will, therefore, refer to the Weiser Irrigation District a respondent, and when referring to two or more of the parties named as defendants will use the plural, "respondents." There appears to be no substantial difference between the parties as to the facts of the case. The real controversy here involves the rules of law applicable to the facts. The trial judge in denying plaintiff's right of recovery appears to have predicated his decision upon the following grounds, as stated by him in his memorandum opinion furnished the respective counsel and carried into his findings and judgment. He said:

"The Court is of the opinion that public waters of the state, impounded in a reservoir, do not become either the personal property or private property of the owners of the reservoir. Further that while there is a distinction between storage water and water flowing in the stream, the distinction as contended for by plaintiff does not exist. The Court is of the opinion further that such waters when impounded in a reservoir remain the public waters of the state; that the rights to the use of the same are usufructuary, that the ownership of public waters by the state constitutes a trust to be administered so as to accomplish the greatest benefit to the people of the state; that water rights are conferred by law; that their exercise are controlled by law, and that private parties cannot make a law respecting water rights to suit their own convenience."

Appellant, respondent and Weiser Bench Irrigation Company had a water right or water rights in the waters of Crane Creek, sufficient for the full capacity of the reservoir and to supply each its amount of water provided for by the contract. Their appropriations were not made from the reservoir but were made from the natural stream,—that is, from the public waters of the state. No other locator or appropriator of the waters of that stream was making any claim to any of this water. The water was diverted from the stream each year and stored in the reservoir. The state

is not here questioning appellant's right, either to divert the water or store it in the reservoir.

After the water was diverted from the natural stream and stored in the reservoir it was no longer "public water" subject to diversion and appropriation under the provisions of the Constitution (art. 15, sec. 3). It then became water *"appropriated for sale, rental or distribution"* in accordance with the provisions of sections 1, 2 and 3, art. 15 of the Constitution. The waters so impounded then became the property of the appropriators and owners of the reservoir, impressed with the public trust to apply it to a beneficial use. A subsequent appropriator claiming a part or all of such waters would be the only person who could question the lack, extent, or nature of its application to a beneficial use.

We are treating the water appropriation here from which this reservoir is supplied as being taken from a natural stream or flow of "public waters." It is not entirely clear from the record, and we accordingly do not pass upon the question, as to whether or not the waters collected in this reservoir are in fact taken from a natural stream or on the contrary are a mere collection of flood waters from rains and melting snow that runs off in the winter and spring and does not actually comprise or enter any natural stream or body of water. If the water impounded belongs to the latter class, then it is the unqualified private property of the owners of the reservoir, and they may do with it as they see fit. (*King v. Chamberlin,* 20 Ida. 504, 118 Pac. 1099; *Public Utilities Commission v. Natatorium Co.,* 36 Ida. 287, at 302, 211 Pac. 533; *Union Central Life Ins. Co. v. Albrethsen,* 50 Ida. 196, 202, 294 Pac. 842; *Hinton v. Little,* 50 Ida. 371, 374, 296 Pac. 582; *Vaughan v. Kolb,* 130 Or. 506, 280 Pac. 518; *Hagerman Irr. Co. v. McMurry,* 16 N. M. 172, 113 Pac. 823; 1 Wiel on Water Rights, 3d ed., sec. 37.) Otherwise, it is impressed with the public trust as above indicated.

No one can make an appropriation from a reservoir or canal for the obvious reason that the waters so stored or conveyed are already diverted and appropriated and are

no longer "public waters." (*Rabido v. Furey,* 33 Ida. 56, 190 Pac. 73.) This does not mean, however, that the reservoir or canal owner may waste the water or withhold it from persons who make application to rent the same. (*Van Camp v. Emery,* 13 Ida. 202, 89 Pac. 752; *Gerber v. Nampa & Meridian Irr. Dist.,* (on rehearing) 16 Ida. 22, 26, 100 Pac. 88; *Niday v. Barker,* 16 Ida. 73, 79, 101 Pac. 254; *Farmers' Co-op. Ditch Co. v. Riverside Irr. Dist.,* 16 Ida. 525, 535, 102 Pac. 481; *Schodde v. Twin Falls Land & Water Co.,* 161 Fed. 43, 88 C. C. A. 207, affirmed 224 U. S. 107, 32 Sup. Ct. 470, 56 L. ed. 686.) If, on the other hand, the owner of the reservoir owns land subject to irrigation from such reservoir, he may apply it to his own land or sell it to others, or both, according to the priorities of their applications.

Now it appears from the record here that these irrigation districts were not actually using this water on their own lands but were each distributing their appropriations to the land owners in their respective districts and collecting rents therefor; or, possibly more accurately stated, assessments.

Respondents contend that "the parties in interest in this case are cotenants in this reservoir and the water impounded therein, and that their rights are determined by the law of cotenancy." We agree with respondents that the owners of these respective interests are cotenants. (See secs. 54–508, 54–104, I. C. A.; *Powell v. Powell,* 22 Ida. 531, 126 Pac. 1058; *Keyser v. Morehead,* 23 Ida. 501, 130 Pac. 992.)

Respondent did not relocate appellant's share of water; the water was actually diverted under appellant's water right. There is a distinction between a *water right* and the *water itself after impounded.* The former is the basic right to have the thing, the latter is the thing itself. Respondent did not acquire and does not pretend that it acquired by location the basic right to have the water, but it now claims that it acquired the right to use the water, both because it was a cotenant with appellant and also because appellant did not use it and had abandoned it.

After the water was diverted and impounded in the reservoir appellant, respondent and Weiser Bench Irrigation Company were tenants in common in the water so impounded as well as in the reservoir. Respondent had the right to draw from the reservoir its share of the water. The question then arises as to the authority or right by which it diverted and distributed to its consumers water stored under appellant's appropriation.

It is urged that a tenant in common is entitled to the use, benefit and possession of the common property, provided he does not exclude his cotenant from a like use, occupancy and benefit. This appears to be the recognized rule. (*Kerfoot v. Greenlee,* 87 Okl. 69, 209 Pac. 444; *Rodda v. Best,* 68 Mont. 205, 217 Pac. 669; *Shea v. Peters,* 126 Or. 76, 268 Pac. 989; *Howard v. Throckmorton,* 59 Cal. 79; *Varnum v. Leek,* 65 Iowa, 751, 23 N. W. 151; *Morris v. Morris,* (Tex. Civ. App.) 105 S. W. 242; note to *Arnold v. DeBooy,* 39 A. L. R. 408; 62 C. J. 421.)

It is also well settled that where a cotenant leases or lets the property for profit he must account to his cotenant. (*McCaw v. Barker,* 115 Ala. 543, 22 So. 131; *Regan v. Regan,* 192 Ill. 589, 61 N. E. 842; *Cheney v. Ricks,* 187 Ill. 171, 58 N. E. 234; *Van Ormer v. Harley,* 102 Iowa, 150, 71 N. W. 241; 62 C. J. 446–449.) Where the common property, however, is such as water, and one acre-foot is the same as another, the units being of equal value and indistinguishable, it would be straining the rule to hold that one cotenant may draw off, use and enjoy the full number of acre-feet to which he is entitled and then because he is a cotenant, he may either use or sell the share of his cotenant without in any sense being responsible therefor.

The rule applicable to the rights of tenants in common in oil, gas and minerals might well apply to stored water and water rights owned by tenants in common. In *Texas & Pac. C. & O. Co. v. Kirtley,* (Tex. Civ. App.) 288 S. W. 619, at 622, the Court of Appeals, in considering a case involving oil and gas owned by tenants in common, said:

"The law is that a tenant in common has the right to occupy the whole joint property, but if he takes out oil or gas he must account to the cotenant for the value of their proportionate part of the oil and gas upon one of two basis: If his taking of the oil and gas be with the knowledge and consent of his cotenants, he must respond to that by paying the usual and customary royalties for oil and gas in place in the vicinity of the premises; but if the taking of the oil and gas is contrary to their rights, he must account to them by paying them the value of their proportion of the oil and gas at the mouth of the well, for he is regarded as a trespasser. Thornton's Law of Oil & Gas, vol. 1 (4th Ed.), § 313a; *Mills v. Willingham*, Law of Oil & Gas, page 270."

■ Respondents rely on the case of *Glavin v. Salmon River Canal Co.*, 44 Ida. 583, 258 Pac. 532, in support of the contention "that the minute appellant was unable to use the water (stored) in any year, it then became public unappropriated water," and that respondents might thereupon use it without let or hindrance and without liability therefor to appellant. The Glavin case is not controlling here. There the specific question before the court was the validity of Rule 5 adopted by the canal company operating under a Carey Act Segregation. The obnoxious provision of the rule was as follows:

"In order to encourage the greatest practical economy by individual water users from year to year, each water user will be entitled to carry over for use the following season as individual or personal storage, such water as has been allotted to him but not used, subject, however, to the restrictions hereinafter set out."

The trial court found "as a conclusion of law that Rule 5 was illegal and void." This court affirmed the ruling of the trial court, saying: "We think the holding of the trial court, that distribution of the water in the reservoir cannot be lawfully based upon the by-law as it now exists, was proper." In that case some of the water users, acting under the authority of Rule 5, left over a quantity of their various water storage supplies and after they had ac-

cumulated for about three years, sought to draw off from the reservoir the full amounts that had been left over during the preceding years. An action was commenced to enjoin the distribution under Rule 5.

This court, as well as the trial court, held that such a method of distribution could not be sustained and pointed out various reasons why it could not be done, principal among which was that the loss by evaporation and transportation would be enormous (more than 50 per cent of the original storage) and that if such a rule should be allowed, it would eventually accumulate the rights of those who had left-over-water in the canal until it would rob the regular water users of any supply at all for the year or years when the accumulated rights were being used. This holding was predicated on the theory that the rule was contrary to the public policy of the state demanding economical use of water. In course of the discussion and by way of argument, the court made some observations as to the nature of the title and character of ownership the water user has in the waters impounded in the reservoir, from which he · receives his water supply. The holding of the court in that case upon the issue submitted does not support respondent's contention, nor are mere statements *arguendo* made by the writer of an opinion to be taken as a modification of a rule of law not involved in the case.

The contention that appellant had abandoned its water right is not tenable. That the *water right* itself had not been abandoned is demonstrated by the fact that the water was actually diverted from the natural stream and impounded in the reservoir each year, and no other appropriator was contesting the right of the reservoir owners to so divert and impound the water, and we have no controversy here between prior and subsequent appropriators.

The law presumes that the possession of one cotenant is the possession of all the cotenants, and no presumption of abandonment arises in such cases. (*Moss v. Rose*, 27 Or. 595, 41 Pac. 666, 50 Am. St. 743; cited with approval in *Hall v. Blackman*, 8 Ida. 272, 68 Pac. 19;

*Carnes v. Dalton*, 56 Or. 596, 110 Pac. 170, 173; see also cases *supra.*)

The trial court found that appellant had never made final proof of completion of diversion works and application of water and concluded that "on account of plaintiff's failure to make proof of application of water to beneficial use," it had lost all rights acquired under water right locations except to the extent of 6,000 acre-feet which it had annually delivered to two small tracts of 372 acres and 613, respectively. Such a conclusion is erroneous as applied to the facts of this case. Appellant's right to the water stored was not being questioned or contested by any other appropriator, nor was it questioned by the state. There is no virtue in making proof of completion of diversion and storage system except to fix the time from which the right shall date by relation back to the filing of the location and application. (*Reno v. Richards*, 32 Ida. 1, 178 Pac. 81; *Nielson v. Parker*, 19 Ida. 727, 115 Pac. 488.) Otherwise the right will date from time of application of water to beneficial use. Furthermore, respondent, as co-owner of the reservoir and water rights and cotenant with appellant, was in no position to raise this question, nor could it, *after the water had been actually diverted and impounded*, profit by the failure of appellant to either make final proof of completion of the diversion works, or take from the reservoir appellant's share of the water and distribute it to its water consumers. The court finds that respondent had made its proof of the completion of the diversion works for its share of the water. The same diversion works impounded the waters belonging to all these parties. The fact that the water was actually impounded is conclusive that diversion works had been constructed, and this was sufficient as between the co-owners.

Respondents place reliance on the provision contained in the contract of April 18, 1923, wherein it says:

"It being expressly covenanted and agreed that said waters so reserved [to appellant's grantors] shall be appurtenant to said lands and no' others and to be used

only for the irrigation of said lands and domestic and stock use thereon.''

It is contended, and so concluded by the trial court, that the foregoing provision in the contract precluded appellant from renting or distributing any of this water to be used on any lands outside of the territorial limits of appellant district. Counsel on both sides have discussed at length the force and effect of this stipulation and have cited many authorities touching upon the nature and effect of the stipulation as either a covenant or a condition subsequent between the co-owners in the reservoir and water appropriations. It will be unnecessary for us to consider or pass upon the *effect* of this stipulation in the present case for the reason that since the stipulation purported to prohibit appellant from renting or distributing its share of the water to any lands outside of its district, it was equally binding upon the other parties to the contract as co-owners, in so far as it applied to *this specific interest* in the water appropriation. In other words, if, under the agreement, appellant could not sell or distribute this water to be used outside of its district, certainly respondent could not take the same water under the same appropriation and sell and distribute it to its water users outside of appellant district, and when called upon for compensation set up the defense that to use the water outside the district was in violation of the stipulation and covenants of the contract. Respondents should be estopped to do so. The theory of abandonment by appellant of its rights cannot prevail in this case.

It appears, so far as the record before us is concerned, to be undisputed that some negotiations or conversations took place between the officers of these companies as late as 1930, to the effect that respondent might use appellant's unused portion of the water stored in the reservoir and credit appellant on its indebtedness for repairs on the reservoir, at the rate of one dollar per acre-foot. This evidence, undisputed as it is, is sufficient to show that appellant had no intention of abandoning any of its rights and had not done so up to that time. This comment upon the evidence

is not intended to preclude or affect the rights of the parties to introduce any other or additional evidence on that issue upon a further hearing of the case.

We have reached the conclusion that the judgment in this case must be reversed for the reasons hereinbefore stated. It will be necessary for the trial court to make further findings of fact and the respective parties should be allowed to introduce any further evidence they may have upon the issues of fact not passed upon herein and on which the court will have to find.

The court should find whether or not any contract or agreement, express or implied, was entered into between appellant and respondent for the use of this water. If the court finds that such a contract was entered into, it will assess the amount due, but if it finds that no such contract was entered into, then it will be necessary for the court to find what, if anything, the defendants, or either of them, realized or profited from the sale, rental or distribution of appellant's share of this water during the years 1928, 1929, 1930 and 1931; and under the principles of law hereinabove suggested they should be held liable as cotenants to the extent they profited from the sale, rental or distribution of their cotenant's share in this water appropriation. Judgment is reversed and cause remanded for further proceedings in harmony with this opinion. Costs awarded to appellant.

Givens, C. J., and Budge, Morgan and Holden, JJ., concur.

Petition for rehearing denied.