# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 39831

SKY CANYON PROPERTIES, LLC, an
Idaho limited liability company; ROBERT C.
SAMUEL; JOE K. DONALD and LISBETH
LILLEMORE DONALD, husband and wife;
WAYNE A. GIANOTTI and CAROLYN M.
GIANOTTI, husband and wife; RUSSELL
M. WICKS and EVELYN L. WICKS,
husband and wife; BUDDY C. STANLEY
and JUDITH L. STANLEY, Trustees of the
Stanley Family Trust dated February 26,
2004; CRAIG R. FALLON and M. ELLEN
FALLON, husband and wife,

  Plaintiffs-Appellants,

v.

THE GOLF CLUB AT BLACK ROCK, LLC,
an Idaho limited liability company,

  Defendant-Respondent.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Coeur d'Alene, September 2013
Term

2013 Opinion No. 114

Filed: November 26, 2013

Stephen W. Kenyon, Clerk

---

Appeal from the District Court of the First Judicial District of the State of Idaho,
in and for Kootenai County. The Hon. John T. Mitchell, District Judge.

The judgment of the district court is <u>reversed</u>.

Mischelle R. Fulgham, Lukins & Annis, Coeur d'Alene, argued for appellants.

John F. Magnuson, Coeur d'Alene, argued for respondent.

---

EISMANN, Justice.

  This is an appeal out of Kootenai County regarding the interpretation of covenants, conditions, and restrictions for a subdivision. We reverse the judgment of the district court and award the appellants attorney fees on appeal.

# I.
## Factual Background.

Black Rock Development, Inc., an Idaho corporation, developed a planned unit development consisting of residential homes and a golf course on the shore of Lake Coeur d'Alene. The development was named Black Rock. The plat was recorded on August 16, 2001, and thereafter plats were recorded for additions one through eight. The development consists of about 659 acres.

On July 21, 2001, Black Rock Development recorded covenants, conditions, and restrictions (CC&R's) applicable to the development. The CC&R's created the position of "Declarant," named Black Rock Development as the Declarant, stated the rights of the Declarant, defined the time period that the Declarant would be entitled to exercise those rights, and specified the qualifications for a "Successor Declarant." The rights of the Declarant included "the exclusive powers to appoint, remove and replace Directors and officers of the [Black Rock Homeowners'] Association."

The golf course in the development was developed and owned by The Club at Black Rock, LLC (The Club). Its property, consisting of about 206 acres, included an eighteen-hole, championship golf course, a 31,000-square-foot clubhouse, golf practice and maintenance facilities, tennis courts, a swimming pool and Jacuzzi, and a private beach. The Club had executed deeds of trust as security for the payment of bank loans it had obtained from the Washington Trust Bank (Bank). On August 11, 2010, The Club conveyed its real property to the Bank in lieu of foreclosure. On the same date, Black Rock Development assigned to the Bank all of its rights and interests as the Declarant under the CC&R's.

On August 23, 2010, the Bank assigned the real property and the Declarant rights to West Sprague Avenue Holdings, LLC (West Sprague). On October 29, 2010, West Sprague deeded the real property and assigned the Declarant rights to an entity named The Golf Club at Black Rock, LLC (The Golf Club), which is a different entity than The Club. On November 5, 2010, Black Rock Development assigned to The Golf Club any Declarant rights that Black Rock Development may still have retained due to any procedural or substantive defect in the prior assignments.

On April 1, 2011, the Plaintiffs, who are the owners of at least one lot in Black Rock and are members of the Black Rock Homeowner's Association, Inc., filed this action against The

Golf Club seeking a declaratory judgment that it was not qualified to be a Successor Declarant and therefore could not exercise the Declarant rights. Both sides moved for summary judgment on the issue of whether The Golf Club satisfied the requirements of being a Successor Declarant under the CC&R's. The district court held that it did. It therefore dismissed the complaint and awarded court costs, including attorney fees, against the Plaintiffs. They then timely appealed.

## II.
## Did the District Court Err in Its Interpretation of the CC&R's?

When interpreting CC&R's, this Court generally applies the rules of contract construction. *Pinehaven Planning Bd. v. Brooks*, 138 Idaho 826, 829, 70 P.3d 664, 667 (2003). However, because provisions in the CC&R's that restrict the free use of property are in derogation of the common law right to use land for all lawful purposes, the Court will not extend by implication any such restriction not clearly expressed and all doubts are to be resolved in favor of the free use of land. *Id*.

"If a contract's terms are clear and unambiguous, the contract's meaning and legal effect are questions of law to be determined from the plain meaning of its own words." *Bream v. Benscoter*, 139 Idaho 364, 367, 79 P.3d 723, 726 (2003). "Whether a contract is ambiguous is a question of law over which we exercise free review." *Howard v. Perry*, 141 Idaho 139, 142, 106 P.3d 465, 468 (2005). "Ambiguities can be either patent or latent." *Swanson v. Beco Constr. Co., Inc.*, 145 Idaho 59, 62, 175 P.3d 748, 751 (2007). "Idaho courts look solely to the face of a written agreement to determine whether it is [patently] ambiguous." *Ward v. Puregro Co.*, 128 Idaho 366, 369, 913 P.2d 582, 585 (1996). "A latent ambiguity is not evident on the face of the instrument alone, but becomes apparent when applying the instrument to the facts as they exist." *In re Estate of Kirk*, 127 Idaho 817, 824, 907 P.2d 794, 801 (1995). In this case, the parties do not contend that there is a latent ambiguity in the relevant provisions of the CC&R's. "[T]he parties to a contract are free to define in the contract words that are used therein, even if those definitions vary from the normal meanings of the words." *Idaho Trust Bank v. Christian*, 154 Idaho 657, 659, 301 P.3d 1275, 1277 (2013). "A contractual provision will be found ambiguous if it is reasonably subject to conflicting interpretations." *Lovey v. Regence BlueShield of Idaho*,139 Idaho 37, 46, 72 P.3d 877, 886 (2003).

Section 2.22 of the CC&R's defines the "Declarant." It states, "Black Rock Development, Inc., an Idaho corporation, or its successors or assigns, including any Successor Declarant to the extent the rights of Declarant are assigned to the Successor Declarant, as provided in Section 2.50." Thus, an assignee of Black Rock Development can be a Declarant under the CC&R's "to the extent the rights of Declarant are assigned to the Successor Declarant, as provided in Section 2.50."

Section 2.50 of the CC&R's provide that a Successor Declarant must be an assignee of any or all of the Declarant's "rights, obligations or interest as Declarant, as permitted by Section 27.7."[1] Section 27.7 provides that a Declarant may assign any or all of the Declarant's rights "to any successor who takes title to all or part of the Property in a bulk purchase for the purpose of development and sale."[2]

The Golf Club contended that it qualified as a Successor Declarant because when it purchased the property originally owned by The Club, "the intention was to develop and sell memberships for use of the 'Club Property.' " It argued that when The Club went out of business, it cancelled all of its memberships, that The Golf Club therefore had to develop and sell new memberships, and that it had "sold approximately one hundred seventy-two (172) memberships allowing individuals to utilize the 'Club Property' in accordance with the terms of the applicable Membership Agreements."

The district court agreed, holding that the word "Property" in section 27.7 was not limited to real property. Therefore, the intent to develop and sell golf club memberships satisfied the requirement that the Successor Declarant take "title to all or part of the Property . . . for the

---

[1] The full text of Section 2.50 is as follows:

> 2.50. <u>Successor Declarant</u>. Any party or entity to whom Declarant assigns any or all of its rights, obligations or interest as Declarant, as permitted by Section 27.7 and evidenced by an assignment or deed of record in the office of the Recorder of Kootenai County, Idaho, designating such party as a Successor Declarant, signed by the transferor and the transferee. Upon such recording, Declarant's rights and obligations under the Declaration will cease and terminate to the extent provided in such document, and all such rights and obligations shall be transferred to and assumed by the Successor Declarant to the extent provided in such document.

[2] The full text of Section 27.7 is as follows:

> 27.7 <u>Assignment</u>. Declarant may assign all or any part of the Special Declarant Rights or any of Declarant's other rights and reservations hereunder to any successor who takes title to all or part of the Property in a bulk purchase for the purpose of development and sale. Such successor will be identified, the particular rights being assigned will be specified, and, to the extent required, concomitant obligations will be expressly assumed by such successor, all in a written instrument duly recorded in the records of the Recorder of Kootenai County, Idaho.

purpose of development and sale." The district court's interpretation of the provision was erroneous because the word Property in section 27.7 unambiguously refers to real property.

The applicable provisions of the CC&R's are not ambiguous. Section 2.46 states that "Property" "[i]ncludes the property described on Exhibit 'A' and initially subjected to this Declaration, and also refers to any Expansion Property that may be incorporated in the Project from time to time and made subject to these Covenants pursuant to the provisions of this Declaration." Exhibit "A" is the legal description of the real property initially included in the Project. Expansion Property is also defined as being real property.[3] Thus, both the property described in Exhibit "A" and any Expansion Property later incorporated into the Project are real property, not personal property. There is nothing in the contractual definition of Property that could be construed as including personal property.

Likewise, the "Project" is defined in section 2.46 as "Community and any additions, pursuant to 2.7. of this Declaration." The word "Community" is defined in section 2.20 as "[t]he Black Rock Planned Unit Development." A planned unit development involves the development of real property, not personal property. I.C. § 67-6515. Thus, section 2.7 defines "Black Rock Planned Unit Development" as "[t]he community created by this Declaration ('Community'), consisting of the Property (including any Expansion Property, after annexation in accordance with Article 22) and all of the improvements located on the Property, also referred to herein from time to time as 'Project', pursuant to 2.46." The Project and the Black Rock Planned Unit Development are defined as referring only to real property.

The CC&R's provide that they were adopted only to apply to real property. The second sentence states, "Declarant hereby adopts the following Covenants, Conditions and Restrictions for the Black Rock Planned Unit Development and any additions (hereinafter referred to as the "Project" located at the Property), and declares that the following shall apply to the subject Property and to any interest in that Property." The third sentence states that the CC&R's "shall run with the land, and with each estate therein." The CC&R's state that they are "intended to regulate the Project and use of the Black Rock Planned Unit Development for the mutual benefit of future Owners and occupants."

---

[3] Section 2.31 states:

> 2.31. <u>Expansion Property</u>. Such additional real property now owned or in the future acquired by Declarant (including any Successor Declarant) as Declarant may make subject to the provisions of this Declaration, by duly recorded Declaration of Annexation.

Finally, the only property owned by The Club that was covered by the CC&R's was its real property. Section 2.16 defined "Club" as being "The Club at Black Rock, L.L.C., an Idaho limited liability company." "Club Property" was defined as follows:

> 2.17. <u>Club Property</u>. Means all of the *real property* owned by the Club or its successors or assigns plus all of the recreational and social facilities and maintenance facilities *constructed thereon*, which will be operated by the Club or its successors or assigns and commonly known as The Club at Black Rock, including without limitation, the golf course, the golf clubhouse, golf practice facilities, golf maintenance facilities, tennis courts, swimming pool, private beach, and any other recreational facilities offered by the Club. THE CLUB PROPERTY IS NOT COMMON AREA.

(Emphasis added.)

In summary, neither the district court nor The Golf Club has pointed to any provision of the CC&R's that indicates the word "Property" meant anything other than real property that was subject to the CC&R's. Section 27.7 requires that a Successor Declarant have taken title to "all or part of the Property . . . for the purpose of development and sale." The phrase "for the purpose of development and sale" refers to the reason for taking title to the Property. The only logical construction is that the Successor Declarant must have acquired title to all or part of the Property for the purpose of developing and selling the Property acquired.

That is consistent with the definition of "Development Rights" in the CC&R's. Section 16 of the CC&R's is entitled "Special Declarant Rights and Additional Reserved Rights." Section 16.1.2 states:

> 16.1.2. <u>Development Rights</u>. The right to exercise all development rights in connection with the development of the Community (referred to here as "Development Rights"), including without limitation the right or combination of rights hereby reserved by Declarant, as follows:
> (a) The right to annex all or part of the Expansion Property, if any, to the Project, in accordance with Article 22.
> (b) The right to create Lots and Common Area on the Property, including, if any, the Expansion Property.
> (c) The right to subdivide Lots and convert Lots Into Common Area on any part of the Property, including, if any, the Expansion Property.
> (d) The right to withdraw real estate, whether contained within the Property initially subject to this Declaration or within the Expansion Property, if any, from Community, as provided in Article 22.
> (e) The exclusive right to modify road, water, sewer, dry utilities and fire systems in accordance with any requirements of Kootenai County or any other governing agency having jurisdiction for such systems.

6

(f) The right to develop the Property and/or the Expansion Property in such phases as Declarant deems appropriate.

Likewise, the provision in the CC&R's indicates that the sales are of real property. Section 16.1.3 entitled "Sales Activities" states, "The right to maintain sales and management offices, signs advertising the project and model residences on the Common Area and on Lots owned by Declarant, whether contained within the Property initially subject to this Declaration, or within the Expansion Property, if any."

In this case, The Golf Club acquired title to about 206 acres that had been developed into a golf course, clubhouse, and other facilities. Roger Rummel, a managing member of The Golf Club, stated that its intention in acquiring the real property "was to develop and sell memberships for use of the 'Club Property.' To that end, The Golf Club has since sold approximately one hundred seventy-two (172) memberships allowing individuals to utilize the 'Club Property' in accordance with the terms of the applicable Membership Agreements." Taking title to that real property with the intent of creating and selling memberships in the golf club does not qualify as taking title for the purpose of development and sale of the Property or any part of it.

The Golf Club argues that its acquisition of title to the golf course qualifies because it intended to sell the property if the golf course was not financially successful. Mr. Rummell stated in his affidavit that "in the event that such a goal [creating a 'vibrant and collegial golf course and recreational community atmosphere'] no longer proved to be financially feasible or successful, at some future point in time, then The Golf Club intended to retain all rights to develop and sell the 'Club Property' in a manner compliant with the CC&Rs." During his deposition, Mr. Rummell was asked if there were any plans to use the real property for something other than a golf course. He responded that there were no plans at this time, and added, "The only time that would come into play is if the golf course doesn't survive." Thus, The Golf Club has no current plans to develop or sell the real property it acquired. Since there are no such plans, it did not take title to the real property "for the purpose of development and sale" of it. There is likewise no indication that The Golf Club took title to the real property for the purpose of failing financially. The fact that The Golf Club would seek to recoup its losses by selling the real property or converting it to another use if the business failed does not qualify as the purpose for taking title to the land. That is not a reasonable construction of section 27.7.

Finally, The Golf Club contends that its acquisition of the right to designate Expansion Property in the future qualifies it as a Successor Declarant under section 27.7. Section 22.1 of the CC&R's provides, "Declarant reserves the right . . . to expand the effect of this Declaration to include all or part of the Expansion Property. . . . Declarant will have the unilateral right to transfer to any other person this right to expand by an instrument duly recorded." Black Rock Development and the Bank executed a document entitled "Assignment of Declarant Rights" in which Black Rock Development assigned "all its rights and interests as the Declarant" under the CC&R's to the Bank, which assignment was recorded on August 11, 2010. The Bank then assigned its right, title, and interest in the assignment to West Sprague, which in turn assigned all of its right, title, and interest in the assignment to The Golf Club. It argues that the right to designate future Expansion Property for the purpose of development and sale satisfies the requirements of section 27.7. That argument is not consistent with the CC&R's.

The Declarant can only develop and sell property that it owns. Therefore, the requirement that the Successor Declarant "takes [present tense] title to all or part of the Property . . . for the purpose of development and sale" means that the Declarant must have the purpose of developing and selling the property to which the Declarant has taken title. The Golf Club has not taken title to as yet unknown Expansion Property.

The definition of "Expansion Property" in the CC&R's is "[s]uch additional real property now owned or in the future acquired by Declarant (including any Successor Declarant) as Declarant may make subject to the provisions of this Declaration, by duly recorded Declaration of Annexation." To qualify as Expansion Property, the property must have been owned by Black Rock Development when the CC&R's were recorded or must have been later acquired by the Declarant or Successor Declarant. The possibility of acquiring property in the future that may be developed and sold does not qualify as Expansion Property.

Section 2.47 defines "Property" as including "Expansion Property that may be incorporated in the Project from time to time and made subject to these Covenants pursuant to the provisions of this Declaration." Expansion Property must be incorporated into the Project and made subject to the CC&R's in order to become Property. It cannot be incorporated into the Project until it is owned by the Declarant. Section 1.3 states the right of the Declarant to expand the Project by adding Expansion Property.

1.3. Right to Expand. The Declarant may, in the future, own additional real estate in Kootenai County, Idaho, which it may desire to incorporate into the Black Rock Planned Unit Development (the "Expansion Property"), and the Declarant has reserved the right, but will not be obligated, to incorporate the Expansion Property in whole or in part in the regime established under this Declaration, all as provided in Article 22 below, so that Expansion Property, if and when developed, will be treated as an integral part of the planned unit development of Black Rock.

Section 22.3 states how property is incorporated into the Project. It states, "Any expansion of the Project may be accomplished by recording a Declaration of Annexation and one or more supplemental Plats in the records of the Recorder of Kootenai County, Idaho, before the expiration of the Period of Declarant Control."

In summary, The Golf Club does not qualify as a Successor Declarant under section 27.7. It did not take title to Property for the purpose of sale and development. Because The Golf Club does not qualify as a Successor Declarant, it cannot exercise the rights or powers of a Declarant, including the power "to appoint, remove and replace Directors and officers of the Association" under section 4.3 or the right to "appoint any officer or Director of the Association, as provided in this Declaration or the Bylaws" under section 16.1.5.[4] Therefore, we reverse the judgment of the district court, including its award of costs and attorney fees to The Golf Club.

### III.
### Is Either Party Entitled to an Award of Attorney Fees on Appeal?

Both sides seek an award of attorney fees on appeal pursuant to section 24.8 of the CC&R's, which provides:

If legal assistance is obtained to enforce any of the provisions of the Black Rock Documents, or in any legal proceeding (whether or not suit is brought) for damages or for the enforcement of the Black Rock Documents or the restraint of violations of the Black Rock Documents, the prevailing party will be entitled to recover all costs incurred by it in such action, including reasonable attorneys' fees and legal assistants' fees as may be incurred, or if suit is brought, as may be determined by the court.

---

[4] As Declarant, Black Rock Development could transfer the right to expand under section 22.1 to someone who does not qualify as a Successor Declarant.

Because the appellants are the prevailing party on appeal, they are entitled to an award of costs incurred, reasonable attorney fees, and legal assistant fees pursuant to section 24.8 of the CC&R's.

## IV.
## Conclusion.

We reverse the judgment of the district court and its award of court costs and attorney fees. We remand this case with directions to enter a judgment consistent with this opinion. We award costs and attorney fees on appeal to the appellants.

Chief Justice BURDICK, Justices J. JONES, W. JONES, and HORTON **CONCUR.**