# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 46062

GORDON SYLTE, an individual; SUSAN
GOODRICH, an individual; JOHN SYLTE,
an individual; and SYLTE RANCH
LIMITED LIABILITY COMPANY, an
Idaho limited liability company,

    Petitioners-Appellants,

v.

IDAHO DEPARTMENT OF WATER
RESOURCES and GARY SPACKMAN, in
his capacity as the Director of the Idaho
Department of Water Resources,

    Respondents-Respondents on Appeal,

and

TWIN LAKES IMPROVEMENT
ASSOCIATION, MARY A. ALICE, MARY
F. ANDERSON, MARY F. ANDERSON, et
al., DEBRA ANDREWS, JOHN ANDREWS,
MATTHEW A. BAFUS, CHARLES &
RUTH BENAGE, ARTHUR CHETLAIN,
JR., CLARENCE & KURT GEIGER
FAMILES, MARY K. COLLINS / BOSCH
PROPERTIES, SANDRA COZZETTO, WES
CROSBY, JAMES CURB, MAUREEN
DEVITIS, DON ELLIS, SUSAN ELLIS,
SCOTT ERICKSON, JOAN FREIJE,
AMBER HATROCK, BARBARA HERR,
WENDY & JAMES HILLIARD, PAT &
DENISE HOGAN, STEVEN & ELIZABETH
HOLMES, LEIF HOUKAM, DONALD
JAYNE, DOUGLAS I. & BERTHA MARY
JAYNE, TERRY KIEFER, MICHAEL
KNOWLES, ADAM KREMIN, ROBERT
KUHN, RENE LACROIX, JOAN LAKE-
OMMEN, LARRY D. & JANICE A. FARIS
LIVING TRUST, TERRY LALIBERTE,
PATRICK E. MILLER, WILLIAM H.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Boise, April 2019 Term

Filed: June 14, 2019

Karel A. Lehrman, Clerk

**MINARTE, ANGELA MURRAY, DAVID R.** )
**NIPP, JOHN NOONEY, STEVE & PAM** )
**RODGERS, KIMBERLI ROTH, DAVID &** )
**LORI SCHAFER, DARWIN R. SCHULTZ,** )
**MOLLY SEABURG, HAL SUNDAY, TCRV** )
**LLC, TWIN LAKES, LLC, RICK &** )
**CORRINNE VAN ZANDT, GERALD J.** )
**WELLER, BRUCE & JAMIE WILSON,** )
**DAVID ZIUCHKOVSKI, PAUL FINMAN,** )
**and TWIN LAKES FLOOD CONTROL** )
**DISTRICT NO. 17,** )
)
    **Intervenors-Respondents on Appeal.** )
_____ )

Appeal from the District Court of the First Judicial District of the State of Idaho, Kootenai County. Eric J. Wildman, District Judge.

The district court's determination is affirmed.

Givens Pursley, LLP, Boise, for appellants. Michael P. Lawrence argued.

Lawrence G. Wasden, Idaho Attorney General, Boise, for respondent Idaho Department of Water Resources. Kristina Fugate argued.

Parsons Behle & Latimer, Boise, for respondents-intervenors Twin Lakes Improvement Association, et al. Norman M. Semanko argued.

Barker Rosholt Simpson, LLP, Boise, for respondent-intervenor Twin Lakes Flood Control District No. 17. Albert P. Barker argued.

_____

BRODY, Justice.

This appeal concerns the distribution of water to water right 95-0734 in the Twin Lakes-Rathdrum Creek Drainage Basin. Sylte Ranch, LLC, is the current claimant on water right 95-0734, which dates from the year 1875 and provides natural flow stockwater from Rathdrum Creek. On September 20, 2016, Idaho Department of Water Resources (IDWR) issued a letter of instructions to the local watermaster in response to a complaint that he was releasing storage water from Twin Lakes contrary to the 1989 Final Decree that established all existing rights to Twin Lakes' surface waters, tributaries, and outlets. These instructions led Sylte to file a Petition for Declaratory Ruling, arguing that IDWR should set aside and reverse the instructions because

2

they improperly limited water right 95-0734 to Twin Lakes' natural tributary inflow. Twin Lakes Improvement Association, et al., and Twin Lakes Flood Control District intervened in the case. Following cross motions for summary judgment, IDWR issued a Final Order, in which it upheld the instructions and granted intervenors' motion for summary judgment. Sylte then sought judicial review and the district court affirmed IDWR's Final Order. Sylte timely appealed to this Court. We affirm the district court's determination to uphold IDWR's Final Order because the instructions complied with the plain language of the 1989 Final Decree.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Twin Lakes, formerly known as Fish Lakes, is a body of water consisting of two lakes connected by a man-made channel that was constructed in the early 1900s. The water flows from the upper lake into the lower lake. Fish Creek is the major inlet of the lakes while Rathdrum Creek is the only outlet. This water system lies in mountainous timberland, about three miles north of Rathdrum, Idaho and at the foot of the Selkirk Mountains. In 1906, a dam and outlet structure were constructed at the outlet of Lower Twin Lake, just above Rathdrum Creek.

A general adjudication rights to the use of surface waters in the Twin Lakes-Rathdrum Creek Drainage Basin, including its tributaries and outlets, began in 1975. Following a trial, District Judge Richard Magnuson issued a Memorandum Decision (February 22, 1989) and Final Decree (April 19, 1989, hereinafter the "Final Decree") as part of the general adjudication. The Final Decree includes a list of all existing rights to Twin Lakes' surface waters, tributaries, and outlets as of May 23, 1977. More specifically, the Final Decree provides the following pertinent conclusions of law:

> An appropriator is entitled to maintenance of the stream conditions substantially as they were at the time the appropriator made his or her appropriation, if a change in the stream conditions would interfere with the proper exercise of the water right.

> Only two waters identified herein, Nos. 95-0973 and 95-0974, are entitled to store water and to make beneficial use of stored waters in Twin Lakes. All other water rights with source of Twin Lakes tributary to Rathdrum Creek are direct flow water rights and are entitled to divert, on the basis of priority, a combined rate of flow equal to the inflow to the lakes. Stated in another manner, direct flow water rights can be utilized to divert from Twin Lakes only if the diversions do not injure the storage water rights in Twin Lakes.

> From November 1 of each year until March 31 of the next year, the two storage water rights enable Twin Lakes to be filled to the level of 10.4 feet on the

3

Staff Gauge. From April 1 to October 31 of each year, the rights to fill the lakes is superseded by the right of existing and future direct flow water rights to divert natural inflows to the lakes. Thus from April 1 to October 31 of each year the level of Twin Lakes will decrease due to evaporation and seepage losses, during the periods when direct flow water rights divert the natural inflows.

The priority system of water rights within the Twin Lakes – Rathdrum Creek Drainage Basin applies to all water rights on sources that are hydraulically connected. For example, an early priority right on Rathdrum Creek is senior to a later priority water right on Fish Creek.

When seepage and evaporation losses from Twin Lakes exceed the total natural tributary inflow to Twin Lakes, no water will be released from the lakes to satisfy downstream water rights, with the exception of Water Right No. 95-0734. When this occurs, Water Right No. 95-0734 and water rights that divert from Twin Lakes and from the tributaries to Twin Lakes may divert the natural flow, but not the stored waters, on the basis of water right priority.

The Final Decree established only two storage water rights in the Twin Lakes-Rathdrum Creek Drainage Basin, which are water rights 95-0973 and 95-0974. **"**All other water rights that divert from Twin Lakes are direct flow water rights," which "utilize the flows passing through the lake and are established on a priority basis." While there is natural lake storage, the Final Decree established that "no water right has been developed for the use of this water because it provides a base for the overlying storage rights." Twin Lakes Improvement Association owns the storage water right for water located between the Staff Gauge height of 0.0 and 6.4 feet (right no. 95-0974) in the amount of 5,360 acre-feet. The second storage water right is for water located between the Staff Gauge height of 6.4 and 10.4 feet (right no. 95-0973). While the Final Decree determined the Bureau of Reclamation owned this water right in 1989, the Bureau of Reclamation subsequently conveyed its interest in this right to Twin Lakes Flood Control District.

Sylte Ranch, LLC, is the current claimant of water right 95-0734, which provides natural flow stockwater from Rathdrum Creek to 300 head of stock. This water right has a maximum rate of 0.07 cubic feet per second (cfs) and a maximum amount of 4.10 acre feet per annum (AFA). Gordon Sylte, Susan Goodrich, John Sylte, and Sylte Ranch, LLC, (collectively, "Sylte"), brought this appeal against IDWR to request the court set aside and reverse IDWR's instructions to their local watermaster, arguing that IDWR improperly limited water right 95-0734 to Twin Lakes' natural tributary inflow.

4

Sylte's water right was established in 1875 when the water system's natural condition provided "sufficient direct flow water in Rathdrum Creek . . . to provide 0.07 cfs to the appropriator on a continuous year-round basis." However, in 1989 Judge Magnuson noted in his memorandum decision that "the natural state of Rathdrum Creek in 1875 was definitely not the same as the natural state in 1906 or now." Inflow to Twin Lakes changed since 1875 as a result of climate changes, logging operations' effects on the timber canopy and drainage basin, and the constructions of the dam and outlet structure in 1906. As a result, since 1906, there have been periods when seepage and evaporation losses from Twin Lakes exceed the natural tributary inflow. Neither Sylte nor its predecessors ever appealed, or otherwise challenged, the Final Decree.

On September 20, 2016, IDWR issued a letter (hereinafter "the Instructions") to the WD 95C Watermaster in response to a complaint that he was releasing storage water from Twin Lakes contrary to the Final Decree. The contested provisions in the Instructions state:

4) From April 1 to October 31 of each year, the watermaster will measure the total natural tributary inflow to Twin Lakes (weekly) and allow diversion of up to that amount by the direct flow water rights on the basis of water right priority. *See Decree* at Conclusion of Law 12.

5) From April 1 to October 31 each year, when seepage and evaporation losses from Twin Lakes exceed the total natural tributary inflow to Twin Lakes (as determined by decreasing lake level), no water will be released from the lakes to satisfy Rathdrum Creek water rights, except for water right no. 95-734. *Decree* at Conclusions of Law 12, 14; *Memorandum Decision* at 12-13. When this occurs, all or a portion of the total natural tributary inflow to Twin Lakes, as measured by the watermaster, can be released to satisfy delivery of water right no. 95-734 with 0.07 cfs at the legal point of diversion. If all of the natural inflow must be released to satisfy water right no. 95-734, the watermaster shall curtail all junior direct flow water rights. If only a portion of the inflow is released to satisfy water right no. 95-734, the watermaster shall satisfy water rights that divert from Twin Lakes and its tributaries using the remainder of the natural flow, on the basis of water right priority.

6) From April 1 to October 31 of each year, when seepage and evaporation losses from Twin Lakes do not exceed the total natural tributary inflow (as determined by steady or increasing lake level), the watermaster shall distribute the total natural tributary inflow to water rights that divert from Twin Lakes and its tributaries and Rathdrum Creek on the basis of water right priority. *See* Decree at Conclusions of Law 12, 14.

7) If release of all of the natural tributary inflow does not satisfy delivery of water right no. 95-734 within a 48-hr period, the watermaster shall consult with the Department's Northern Regional Manager or designated Department representative, regarding determination of a futile call with respect to delivery of water right no. 95-734. The Department's Northern Regional Manager will issue written notice to the watermaster regarding the futile call determination. A futile call determination will result in non-delivery of water right no. 95-734.

On February 16, 2017, Sylte filed a Petition for Declaratory Ruling, asking IDWR to reverse and set aside the Instructions. Sylte argued the Instructions improperly limited the distribution of water right 95-0734 to the "natural tributary inflow," which is contrary to the 1989 Memorandum Decision and Final Decree, as well as the prior appropriation doctrine set forth in article XV, Section 5 of the Idaho Constitution. Other water right claimants in the Twin Lakes-Rathdrum Creek Drainage Basin intervened in this action: Twin Lakes Improvement Association and Twin Lakes Flood Control District, both of which own the only two storage water rights in the Twin Lakes-Rathdrum Creek Drainage Basin. Multiple other water users with flow rights also joined Twin Lakes Improvement Association as intervenors.

Following cross motions for summary judgment, IDWR issued its *Order on Motions for Summary Judgment; Order Amending Instructions; Order Vacating Hearing Dates and Schedule* (hereinafter "Final Order") on September 6, 2017, which found the Instructions to be consistent with the Final Decree. In its Final Order, IDWR also amended the Instructions to add the following underlined language: " . . . all or a portion of the total natural tributary inflow to Twin Lakes, as measured by the watermaster, can be released to satisfy delivery of water right no. 95-734 with 0.07 cfs at the legal point of diversion, unless or until the maximum annual diversion volume of 4.1 acre feet has been delivered**."** IDWR granted Intervenors' motion for summary judgment and denied Sylte's request to reverse and set aside the Instructions. Sylte then petitioned for judicial review.

The case was assigned to the Snake River Basin Adjudication District Court pursuant to this Court's Administrative Order dated December 9, 2009. The district court also granted two motions to intervene on November 6, 2017, thereby permitting Twin Lakes Improvement Association, et al., and Twin Lakes Flood Control District to intervene in this case. Sylte argued that the Final Order is contrary to the Final Decree and Idaho's prior appropriation doctrine, and asked the district court to set aside the Final Order.

On April 11, 2018, the district court affirmed the Final Order. The court determined the Final Decree's language was unambiguous and the Instructions complied with its plain language. The court also found that Sylte's argument "assumes and requires the release of the lakes' stored waters to satisfy the right when the amount of natural tributary inflow is insufficient"—a course barred by the plain language of the decree. In addition, the doctrine of res judicata barred Sylte from arguing that the Final Decree was contrary to the doctrine of prior appropriation.

Sylte then filed a Petition for Rehearing, arguing that IDWR's additional language in the Instructions—"unless or until the maximum annual diversion volume of 4.1 acre feet has been delivered"—should be stricken. Sylte argued IDWR added that language sua sponte after the record and briefing were complete, which left Sylte with no chance to address the issue and thereby prejudiced Sylte's due process rights. The district court denied Sylte's Petition for Rehearing, concluding that Sylte "had both notice and an opportunity to be heard on the issue of a 4.1 acre-foot limitation in the prior adjudication." Sylte timely appealed to this Court.

## II. STANDARD OF REVIEW

When a district court acts in an appellate capacity under the Idaho Administrative Procedure Act, this Court reviews the decision to determine whether it correctly decided the issues. *City of Blackfoot v. Spackman*, 162 Idaho 302, 305, 396 P.3d 1184, 1187 (2017) (citation omitted). However, this Court also reviews the agency record independently of the district court's decision. *Id.* An agency's factual determinations are binding on the reviewing court, while questions of law are freely reviewed. *Id.*

## III. ANALYSIS

The primary inquiry in this appeal is the interpretation of Judge Magnuson's 1989 Final Decree. No party actually challenges the Final Decree. Instead, each side presents a different interpretation of the Final Decree's language to determine whether it conflicts with the Instructions issued by IDWR in September of 2016. We agree with the district court that the Instructions complied with the plain language of the Final Decree.

### A. The Instructions complied with the plain language of the Final Decree.

Sylte contends it is entitled to Twin Lakes' "natural, pre-dam outflow to Rathdrum Creek," and that amount should not be restricted to the natural tributary inflow. In comparing Twin Lakes' hydrology to a bathtub, Sylte argues that it is entitled to the "natural flow" of water that progresses through the water system and out the 'drain' to Rathdrum Creek, including the

7

"natural lake storage," on a continuous year-round basis. Both IDWR and Interveners argue that the Final Decree's plain language expressly prohibits Sylte from appropriating stored waters and—as a direct flow water right holder—Sylte can only appropriate the natural tributary inflow. Neither party argues that the Final Decree is ambiguous, but each has constructed a different interpretation of its language. The district court determined that Sylte's argument was untenable because it "assumes and requires the release of the lakes' stored water to satisfy the right when the amount of natural tributary inflow is insufficient." This analysis is correct.

"Upon entry of a final decree, the director shall administer the water rights by distributing water in accordance with the final decree and with title 42, Idaho Code." I.C. § 42-1413(2). When interpreting a final decree, this Court applies the same rules of interpretation as to contracts. *City of Blackfoot v. Spackman*, 162 Idaho 302, 306, 396 P.3d 1184, 1188 (2017); *A & B Irr. Dist. v. Idaho Dep't Of Water Res.*, 153 Idaho 500, 523, 284 P.3d 225, 248 (2012). "A decree is ambiguous if it is reasonably subject to conflicting interpretations." *Spackman*, 162 Idaho at 306, 396 P.3d at 1188. However, if it is unambiguous, a water decree's meaning and legal effect are questions of law to be determined from the plain and ordinary meaning of the decree's words. *Id.*; *Sky Canyon Properties, LLC v. Golf Club at Black Rock, LLC*, 155 Idaho 604, 606, 315 P.3d 792, 794 (2013). Like a contract, this Court will read the decree "as a whole and will give meaning to all of its terms to the extent possible." *Twin Lakes Vill. Prop. Ass'n, Inc. v. Crowley*, 124 Idaho 132, 138, 857 P.2d 611, 617 (1993).

The Final Decree is not ambiguous. Its language clearly separates two types of water rights in the Twin Lakes-Rathdrum Creek Drainage Basin: storage water rights and direct flow water rights. Only two storage rights exist in Twin Lakes, with the Final Decree recognizing that "no water right has been developed" for the use of natural lake storage. All other rights in this water system are direct flow rights.

Sylte does not claim either of the two storage rights in Twin Lakes, which automatically makes its right a direct flow right under the Final Decree. Accordingly, its water right "utilize[s] the flows passing though the lake and [is] established on a priority basis." However, Sytle's argument effectively equates "natural flow" with a "natural storage" right when the Final Decree clearly established "[o]nly two waters identified herein, Nos. 95-0973 and 95-0974, are entitled to store water and to make beneficial use of stored waters in Twin Lakes." As a flow right user, Sylte is entitled to water that naturally flows through the Twin Lakes to Rathdrum Creek. In

8

keeping Sylte's bathtub analysis, he is entitled to the water that flows through the tap and out the drain, but not to the stored water blocks within the tub. Those rights were claimed by other parties in the Final Decree and are the only rights entitled to make beneficial use of the stored waters in Twin Lakes.

If Sylte's water right was determined only by the outflow, Sylte could tap into the stored water rights between the Staff Gauge height of 0 and 10.4 feet in years where tributary inflow is insufficient to satisfy Sylte's right. In those conditions there would simply be no other water source available to release and satisfy Sylte's right from Rathdrum Creek. Nevertheless, releasing storage water is expressly barred by the Final Decree:

> When seepage and evaporation losses from Twin Lakes exceed the total natural tributary inflow to Twin lakes, no water will be released from the lakes to satisfy downstream water right, with the exception of Water Right No. 95-0734. When this occurs, Water Right No. 95-0734 and water rights that divert flow from Twin Lakes and from the tributaries to Twin Lakes may divert the natural flow, but not the stored waters, on the basis of water right priority.

As determined by the district court and IDWR, this provision gives Sylte's water right a unique administrative status to protect the 1875 water right from increased seepage and evaporation created by the 1906 dam and outlet structure. In other words, Sylte is entitled to divert the natural tributary inflow, but not the stored waters, regardless of seepage and evaporation losses. This is a unique protection to Sylte's right. All other direct flow rights are limited to the natural tributary inflows "less evaporation and seepage from Twin Lakes." However, Sylte is still limited to the waters "from the source of their appropriation," which is Rathdrum Creek. This language does not provide releases of the lake's storage waters to create sufficient outflow to satisfy Sylte's right.

Therefore the Final Decree does not provide access to "natural storage water," as Sylte contends. The stored waters are already appropriated, making them unavailable for redistribution to satisfy Sylte's natural flow water right. *See Washington Cnty. Irr. Dist. v. Talboy*, 55 Idaho 382, 389, 43 P.2d 943, 945 (1935) ("After the water was diverted from the natural stream and stored in the reservoir, it was no longer 'public water' subject to diversion and appropriation under the provisions of the Constitution."); *see also Am. Falls Reservoir Dist. No. 2 v. Idaho Dep't of Water Res.*, 143 Idaho 862, 879, 154 P.3d 433, 450 (2007) ("when water is stored, it becomes 'the property of the appropriators . . . impressed with the public trust to apply it to a beneficial use.'") (quoting *Talboy*, 55 Idaho at 389, 43 P.2d at 945).

9

The Instructions are in harmony with the Final Decree. The Instructions generally prohibit the watermaster from releasing water to satisfy Rathdrum Creek water rights when seepage and evaporation losses exceed the natural tributary inflow, while still upholding the exception carved out for Sylte and giving it priority over junior rights.

**B. The futile call doctrine's application to water right 95-0734 does not violate the Final Decree.**

Sylte argues that the futile call procedure in the Instructions violates the Final Decree because the delivery of water to Sylte's right is not limited by the natural tributary inflow. IDWR maintains that Sylte is entitled to tributary inflow, not stored waters, and, consequently, the Instructions' futile call procedure conforms to the Final Decree.

The futile call doctrine in Idaho "embodies a policy against the waste of irrigation water." *Gilbert v. Smith*, 97 Idaho 735, 739, 552 P.2d 1220, 1224 (1976); *see also Hill v. Green*, 47 Idaho 157, 274 P. 110, 110–11 (1928). Generally, this doctrine provides

> if . . . seepage, evaporation, channel absorption or other conditions beyond the control of the appropriators the water in the stream will not reach the point of the prior appropriator in sufficient quantity for him to apply it to beneficial use, then a junior appropriator whose diversion point is higher on the stream may divert the water.

*Gilbert*, 97 Idaho at 739, 552 P.2d at 1224. The Instructions provide the following futile call procedure:

> If release of all of the natural tributary inflow does not satisfy delivery of water right no. 95-734 within a 48-hr period, the watermaster shall consult with the Department's Northern Regional Manager or designated Department representative, regarding determination of a futile call with respect to delivery of water right no. 95-734. The Department's Northern Regional Manager will issue written notice to the watermaster regarding the futile call determination. A futile call determination will result in non-delivery of water right no. 95-734.

As explained in Section A, calculating the natural tributary inflow conforms with the Final Decree's plain language because it determines the amount of water that can be released to satisfy Sylte's right without tapping into Twin Lakes' storage water. This futile call procedure complies with the Final Decree and Idaho water law, and it does not unlawfully prioritize junior users over Sylte's water right. Junior users could only gain delivery where the release of the tributary inflow could not satisfy Sylte's delivery within a 48 hour period and only after the watermaster consults with the designated IDWR representative. This conforms with the *Gilbert* requirements for a futile call.

10

**C. IDWR did not substantially prejudice Sylte by (1) reviewing documents outside the agency record, or by (2) adding volume limitation language to the Instructions.**

Sylte contends that IDWR's (1) review of documents outside the agency record and (2) added volume limitation to the Instructions both substantially prejudiced its rights by denying Sylte notice and the opportunity to address each issue. IDWR argues the references outside the record constituted harmless error while Sylte had notice of the volume limitation in the administrative proceeding. The district court determined that Sylte's substantial rights were not prejudiced by either issue, and that Sylte failed to show a prejudicial error. We agree.

**1. Reviewing documents outside the agency record did not prejudice Sylte's substantial rights.**

Sylte cites to IDWR's rules, which state that "[o]fficial notice may be taken of any facts that could be judicially noticed in the courts of Idaho and of generally recognized technical or scientific facts within the agency's specialized knowledge." IDAPA 37.01.01.602. In addition, "[p]arties must be given an opportunity to contest and rebut the facts or material officially noticed." *Id.* However, Idaho's Administrative Procedure Act mandates that "agency action shall be affirmed unless substantial rights of the appellant have been prejudiced." I.C. § 67-5279(4).

The Final Order quoted two documents from the Twin Lakes general adjudication, including an objection submitted by Sylte's predecessor and IDWR's *Notice of Entry of Final Decree*. Both of these documents were used by IDWR to state that Sylte (through its predecessor) had made the same argument before Judge Magnuson and lost. While IDWR likely committed error by considering and citing to these documents in its Final Order, it still did not prejudice Sylte's substantial rights because the Instructions were consistent with the plain language of the Final Decree. As the district court determined, IDWR would have reached the same result even without the documents. Moreover, the error did not endure into the appellate process because an appellate court reviews a final water decree's plain language freely as a question of law. *See Spackman*, 162 Idaho at 306, 396 P.3d at 1188; *Sky Canyon Properties, LLC*, 155 Idaho at 606, 315 P.3d at 794. Thus, while there was an error by denying Sylte notice and an opportunity to rebut the use of these documents, we will affirm the agency action because it did not prejudice Sylte's substantial rights. I.C. § 67-5279(4).

**2. Adding the volume limitation language to the Instructions did not prejudice Sylte's rights.**

11

In its Final Order, IDWR amended the Instructions to add the following underlined language: " . . . all or a portion of the total natural tributary inflow to Twin Lakes, as measured by the watermaster, can be released to satisfy delivery of water right no. 95-734 with 0.07 cfs at the legal point of diversion, <u>unless or until the maximum annual diversion volume of 4.1 acre feet has been delivered</u>." This is consistent with the Final Decree, which established Sylte's right with a maximum rate of 0.07 cfs and a maximum amount of 4.10 AFA. Because the Final Decree declared Sylte's right with that annual volume limitation, Idaho law requires the right to be administered with that limitation. I.C. § 42-1413(2). The additional language did not prejudice Sylte's rights because the information was known throughout the proceedings. Indeed, the 4.10 AFA annual diversion volume was listed in the agency record and on the decreed right itself as a key element of the water right. IDWR's sua sponte addition of that language into the Instructions could not implicate Sylte's due process rights when Sylte was aware that IDWR must administer its right with the 4.10 AFA limitation, as required by the Final Decree.

In addition, Sylte argues that there is a distinction between "diverting" and "delivering water"—namely, that Sylte is entitled to have water delivered to its point of diversion "on a continuous year-round basis, only to be curtailed when the right has diverted the volume limit in priority." Sylte cites no authority for this distinction, and the district court held that it was a "distinction without a difference." IDWR confirmed at the district court hearing that the amount of water "delivered" is determined by the amount diverted and used by Sylte, not the amount of water flowing past Sylte's headgate. Sylte offers no evidence IDWR has, is, or will administer the water right in a manner contrary to the Final Decree's plain language or inconsistent with the decreed amount of 4.10 AFA. In other words, Sylte offers no support that its rights were prejudiced by the additional language instructing the watermaster to administer Sylte's right according to the Final Decree's annual diversion volume of 4.10 AFA. Therefore we affirm the district court's determination that Sylte's rights were not prejudiced.

**D. No party is entitled to attorney fees.**

Sylte, Twin Lakes Improvement Association, and Twin Lakes Flood Control District all argue they are entitled to attorney fees on appeal. IDWR does not request any fees—it only argues against an award of attorney fees to Sylte. Sylte and the Intervenors cite to Idaho Code section 12-117 (1) and (2) as the basis for their entitlement to attorney fees. It states:

(1) Unless otherwise provided by statute, in any proceeding involving as adverse parties a state agency or a political subdivision and a person, the state agency, political subdivision or the court hearing the proceeding, including on appeal, shall award the prevailing party reasonable attorney's fees, witness fees and other reasonable expenses, if it finds that the nonprevailing party acted without a reasonable basis in fact or law.

(2) If a party to a proceeding prevails on a portion of the case, and the state agency or political subdivision or the court hearing the proceeding, including on appeal, finds that the nonprevailing party acted without a reasonable basis in fact or law with respect to that portion of the case, it shall award the partially prevailing party reasonable attorney's fees, witness fees and other reasonable expenses with respect to that portion of the case on which it prevailed.

I.C. § 12-117 (1)–(2).

While intervenors may request attorney fees under Idaho Code section 12-117, this statute still requires an entity and a state agency to be adverse parties. *Lake CDA Investments, LLC v. Idaho Dep't of Lands*, 149 Idaho 274, 284, 233 P.3d 721, 731 (2010) ("The statute requires that the person and the state agency be adverse parties."). *See also City of Blackfoot v. Spackman*, 162 Idaho 302, 310–11, 396 P.3d 1184, 1192–93 (2017) (entitling an intervenor-coalition to attorney fees against City of Blackfoot); *Neighbors for Pres. of Big & Little Creek Cmty. v. Bd. of Cnty. Comm'rs of Payette Cnty.*, 159 Idaho 182, 191, 358 P.3d 67, 76 (2015) (denying attorney fees to an intervenor that was not adverse to the county, which made the decision being appealed). While section 12-117 has changed over the years, the operative language on adverse parties has not. The statute still requires an entity and state agency to be adverse parties for an award of attorney fees. I.C. § 12-117 (1).

Here, the Intervenors prevailed on the issues but they were not adverse to IDWR. Indeed, the Intervenors sought to enforce IDWR's final determinations against Sylte. In addition, Sylte presented a legitimate question for the Court to address on the interpretation of the Final Decree and the lawfulness of IDWR's actions concerning Sylte's water right. Therefore, none of the parties is entitled to attorney fees on appeal.

## IV. CONCLUSION

We affirm the district court's decision to uphold IDWR's Final Order and decline to make an award of attorney fees. Costs to Intervenors and IDWR on appeal.

Chief Justice BURDICK, and Justices BEVAN, STEGNER, and MOELLER CONCUR.

13