PRESENT: Goodwyn, C.J., Powell, Kelsey, McCullough, and Chafin, JJ., and Koontz, S.J.

CHESAPEAKE HOSPITAL AUTHORITY,
D/B/A CHESAPEAKE REGIONAL MEDICAL CENTER

                                           OPINION BY
v. Record No. 201510           SENIOR JUSTICE LAWRENCE L. KOONTZ, JR.
                                           May 19, 2022
STATE HEALTH COMMISSIONER, ET AL.

FROM THE COURT OF APPEALS OF VIRGINIA

Chesapeake Hospital Authority, d/b/a Chesapeake Regional Medical Center ("CRMC") appeals the Court of Appeals' judgment affirming the circuit court's decision to uphold a denial by the State Health Commissioner ("Commissioner") of its application for a Certificate of Public Need ("COPN") for a new open-heart surgery service and additional cardiac catheterization equipment. In this appeal, the principal issue we consider is whether the harmless error doctrine applies to an error of law in an administrative agency case under the Virginia Administrative Process Act, Code § 2.2-4000 *et seq*.

BACKGROUND

The material facts necessary to our resolution of this appeal are not in dispute. CRMC is a 310-bed, acute care general hospital located in the City of Chesapeake within Planning District 20 ("PD 20"). On July 31, 2017, CRMC applied for a COPN with the Virginia Department of Health ("VDH") pursuant to Code § 32.1-102.1 *et seq*. CRMC sought to develop an open heart surgery program and offer expanded cardiac catheterization services by creating a "hybrid" operating room at its existing Chesapeake facility. CRMC's application was reviewed by the staff of VDH's Division of Certificate of Public Need. Thereafter, the staff report recommended

conditional approval of CRMC's application contingent upon CRMC's acceptance of a charity care condition.[1]

On November 27, 2017, Sentara Hospitals ("Sentara"), also located in PD 20, timely filed a petition seeking good cause to be made a party in the review of CRMC's application, pursuant to Code § 32.1-102.6(E)(3).[2] At Sentara's request, an informal fact-finding conference ("IFFC") was held on Sentara's good cause petition. Following this IFFC, the Commissioner granted Sentara's petition and added Sentara as a party to the review of CRMC's application.

On April 12, 2018, an IFFC on the merits of CRMC's COPN application was convened, with CRMC and Sentara presenting evidence and argument. In a case decision submitted to the Commissioner, the adjudication officer recommended that CRMC's application be denied after evaluating the project in relation to the eight statutory considerations set forth in Code § 32.1-102.3(B).

---

[1] During the same COPN review cycle, Sentara Virginia Beach General Hospital ("SVBGH"), a competing hospital that operates an open heart surgery program in PD 20, filed a COPN application to expand cardiac catheterization services through the addition of cardiac catheterization equipment. SVBGH's application was subsequently approved and was no longer under consideration at the time the Commissioner denied CRMC's application. SVBGH's corporate parent is Sentara Hospitals, an appellee to this appeal.

[2] As defined in Code § 32.1-102.6(G), "Good cause" means that

(i) there is significant relevant information not previously presented at and not available at the time of the public hearing, (ii) there have been significant changes in factors or circumstances relating to the application subsequent to the public hearing, or (iii) there is a substantial material mistake of fact or law in the Department staff's report on the application or in the report submitted by the health planning agency.

On August 24, 2018, the Commissioner, after reviewing the project and adopting the recommendation and report of the adjudication officer, denied CRMC's application. The Commissioner cited the following reasons for the denial:

(i)     CRMC's proposed project is not consistent with the State Medical Facilities Plan;

(ii)    The proposed project would likely decrease utilization at existing providers of open heart surgery, a type of surgery that consists of a highly-specialized, high-acuity, utilization-sensitive and narrow subset of cardiac surgery procedures;

(iii)   The project is duplicative of existing and accessible open heart surgery services in PD 20;

(iv)    The project would not significantly improve geographic or financial access for residents of PD 20 to open heart surgery services; and

(v)     Open heart surgery services are fully accessible and available in PD 20, in a timely manner and within applicable driving time standards.

The report relied upon by the Commissioner specified that CRMC's proposed project was not consistent with the State Medical Facilities Plan ("SMFP") as defined by VDH's regulations. Citing 12 VAC § 5-230-450(A)(1), the report noted that, with respect to determining a need for a new open heart surgery service, the SMFP required CRMC to demonstrate that its existing cardiac catheterization service performed an average of 1,200 diagnostic equivalent procedures ("DEPs") annually. During the IFFC, CRMC maintained this standard considered all services performed in its two existing cardiac catheterization laboratories, with the total number of services exceeding 1,200 DEPs during the relevant reporting period. CRMC reported a total of 1,374 DEPs in 2015. Sentara maintained that CRMC's two cardiac catheterization laboratories performed an average of 687 DEPs in 2015, and averaged 830 during the 2016-2017 period. The report concluded CRMC's project did not appear to meet the standard set forth in 12 VAC § 5-230-450(A)(1) with respect to average DEPs, finding that CRMC "conflated various

3

procedures capable of being performed in a cardiac catheterization laboratory to arrive at its figures" and Sentara's "more credible and reliable."

The report also analyzed whether CRMC's application complied with the SMFP provision within 12 VAC § 5-230-450(A)(2), which states that new open heart services would only be approved if "open heart surgery services located within the health planning district performed an average of 400 open heart and closed heart surgical procedures for the relevant reporting period." CRMC argued that this provision referred to a service located at an acute care hospital, regardless of the number of operating rooms within the hospital. CRMC reported the three existing hospitals with open heart surgery services in PD 20 performed an average of 752 open heart and closed heart procedures in 2015. Sentara argued that "open heart surgery services" referred to individual operating rooms within a hospital, and reported that the hospitals in PD 20 performed an average of 167 procedures per operating room in 2015. Sentara maintained that adopting CRMC's interpretation of analyzing utilization per-service, rather than per-operating room, would be "inconsistent with the remainder of the open heart surgery SMFP" and that "one-high volume program . . . would skew the public need analysis to indicate a need for additional services, despite other existing and underutilized services in the PD."

The report concluded that CRMC's project did not meet the SMFP standard under 12 VAC § 5-230-450(A)(2), reasoning that utilization rates were calculated per-operating room, rather than per-service. The report explained that this interpretation of 12 VAC § 5-230-450(A)(2) was "the most reasonable reading of [this regulation]" when read in context with 12 VAC § 5-230-450(A)(3), which requires a proposed new open heart service to estimate utilization rates prospectively on a per-operating room basis.

4

CRMC filed a petition for appeal in the Circuit Court of the City of Chesapeake, arguing that the Commissioner's decision should be reversed, in part because the Commissioner erred in his interpretation that 12 VAC § 5-230-450(A)(2) required the average number of procedures to be determined on a per operating room basis, rather than per service; and further erred in finding that 12 VAC § 5-230-450(A)(1) required an average of 1,200 DEPs per cardiac catheterization laboratory, rather than per cardiac catheterization service. The circuit court held that while the Commissioner misinterpreted the provision of the SMFP within 12 VAC § 5-230-450(A)(2), as a matter of law, this misinterpretation constituted harmless error. The circuit court reasoned that this subparagraph of the regulation constituted only one part of the SMFP regarding new open heart surgery services, and compliance with the SMFP was only one of eight statutory factors for the Commissioner to consider under Code § 32.1-102.3(B). The circuit court also held that 12 VAC § 5-230-450(A)(1) was genuinely ambiguous and the Commissioner's interpretation warranted deference. Finding the Commissioner did not err with respect to CRMC's remaining assignments of error, the circuit court affirmed the Commissioner's decision and dismissed CRMC's petition.

On appeal to the Court of Appeals, CRMC challenged the circuit court's determination that the Commissioner's incorrect interpretation and application of the SMFP in his case decision was harmless error. In an unpublished opinion, the Court of Appeals, relying in part on *State Health Comm'r v. Sentara Norfolk Gen. Hosp.*, 260 Va. 267 (2000), held that the Commissioner's error of law in misinterpreting the SMFP under 12 VAC § 5-230-450(A)(2) was harmless error, because the project's consistency with the SMFP was only one of eight reasons cited by the Commissioner in denying CRMC's application, and thus was not substantial in

5

nature.  Accordingly, the Court of Appeals affirmed the circuit court's decision and denied

CRMC's petition for a rehearing *en banc*.

We awarded CRMC this appeal on the following assignments of error:

1. The Court of Appeals erred in applying the harmless error doctrine to an agency's legal error in interpreting and applying its own regulations.

2. The Court of Appeals erred in deferring, without robust analysis, to an agency's interpretation of its own regulations in contravention of recent United States Supreme Court precedent [in *Kisor v. Wilkie*, 139 S.Ct. 2400, (2019)].

By an order dated December 28, 2021, we permitted the City of Chesapeake and the

Council of the City of Chesapeake to appear on brief as amici curiae.  Both parties supported

CRMC's application for a COPN.

DISCUSSION

Section 32.1-102.3(A) provides in relevant part that, "No person shall commence any

project without first obtaining a certificate issued by the Commissioner.  No certificate may be

issued unless the Commissioner has determined that a public need for the project has been

demonstrated."[3]  Any decision to issue a certificate must be consistent with the most recent

applicable provision of the SMFP, unless the Commissioner finds an amendment to such plan is

appropriate.  Code § 32.1-102.3(A).  In determining whether a public need for a project has been

demonstrated, the Commissioner must consider eight statutory factors enumerated in Code

§ 32.1-102.3(B), including the project's consistency with the SMFP.  The SMFP is the planning

document adopted by the Board of Health, which includes methodologies for projecting need for

---

[3] The COPN statutory framework at Code § 32.1-102.1 *et seq*., was amended effective July 1, 2020.  These amendments are not pertinent to the issue presented in this appeal. Accordingly, this opinion cites to the statutory provisions in effect at the time of the Commissioner's case decision.

6

medical facilities and services, as well as procedures, criteria, and standards for review of applications for projects for medical care facilities and services. Code § 32.1-102.1.

Relevant to this appeal is whether CRMC's proposed project demonstrates a public need for a new open heart surgery service based on certain utilization metrics, consistent with the SMFP provisions at 12 VAC § 5-230-450(A), which provides that no new open heart services should be approved unless:

1. The service will be available in an inpatient hospital with an established cardiac catheterization service that has performed an average of 1,200 DEPs for the relevant reporting period and has been in operation for at least 30 months;

2. Open heart surgery services located in the health planning district performed an average of 400 open heart and closed heart surgical procedures for the relevant reporting period; and

3. The proposed new service will perform at least 150 procedures per room in the first year of operation and 250 procedures per room in the second year of operation without significantly reducing the utilization of existing open heart surgery services in the health planning district.

12 VAC § 5-230-450(A)(1) – (3).

The provisions of the Virginia Administrative Process Act ("VAPA"), Code §§ 2.2-4000 to 4031, govern the procedures for the appeal of case decisions issued by the Commissioner. *See* Code § 2.2-4026. Under the VAPA, the burden is upon the party complaining of the agency action to demonstrate an error of law. Code § 2.2-4027; *Aegis Waste Solutions, Inc. v. Concerned Taxpayers of Brunswick Cnty.*, 261 Va. 395, 403 (2001). The errors of law subject to review under Code § 2.2-4027 include: (i) the agency's failure to accord constitutional right, power, privilege, or immunity; (ii) the agency's failure to comply with statutory authority, jurisdiction limitations, or right as provided in the basic laws as to subject matter; (iii) the agency's failure to observe required procedure where any failure therein is not mere harmless error; and (iv) the agency's failure to have substantial evidentiary support for its findings of fact.

7

Code § 2.2-4029 provides that, in instances in which a case decision is found not to be in accordance with the law under Code § 2.2-4027, the court "shall suspend or set it aside and remand the matter to the agency for further proceedings, if any, as the court may permit or direct in accordance with law." *See Virginia Bd. of Medicine v. Fetta*, 244 Va. 276, 280 (1992) ("The plain language of [Code § 2.2-4029] mandates where . . . a circuit court has made such a determination of invalidity, the court shall suspend or set the decision aside and remand the matter to the agency.").

CRMC asserts that the Court of Appeals, as well as the circuit court, erred in applying the harmless error doctrine to the Commissioner's legal error in misinterpreting the regulatory term "services" within the SMFP provision at 12 VAC § 5-230-450(A)(2), instead of remanding the matter to the Commissioner for further review as required by the VAPA. First, CRMC asserts that the Commissioner made a legal error in misinterpreting "services" to mean "operating rooms," and under this interpretation, erroneously determined that CRMC could not meet the SMFP's utilization standard requiring an average of 400 open heart and closed heart surgical procedures among existing open heart surgery services in PD 20 within the relevant reporting period. *See* 12 VAC § 5-230-450(A)(2). CRMC asserts that "service" in this context means a clinical health service, such as open heart surgery, whereas "operating room" is defined by 12 VAC § 5-230-10 as "a room used solely or principally for the provision of surgical procedures." Based on the plain meaning of "service" and its use within the SMFP open heart surgery regulations, CMRC contends that the Commissioner erred as a matter of law by misinterpreting the SMFP under the regulation when he denied CRMC's application. We agree.

Although we "give deference to the decisions of administrative agencies when those decisions 'fall within the area the agency's specialized competence,'" such as an agency's

interpretation of its regulations, an agency's regulatory interpretation is not given deference if it is arbitrary and capricious and "constitutes a clear abuse of the agency's delegated discretion." *Virginia Marine Resources Comm'n v. Chincoteague Inn*, 287 Va. 371, 380 (2014) (quoting *Virginia Dept. of Health v. NRV Real Estate, LLC*, 278 Va. 181, 185 (2009)); *Frederick Cnty. Bus. Park, LLC v. Virginia Dept. of Envt'l Quality*, 278 Va. 207, 211 (2009). *See also School Bd. of City of Norfolk v. Wescott*, 254 Va. 218, 224 (1997) ("Actions are defined as arbitrary and capricious when they are 'willful and unreasonable' and taken 'without consideration or in disregard of facts or law or without determining principle.'" (citing Black's Law Dictionary 105 (6th ed.1990)). Further, where a regulatory provision "is unambiguous, we will interpret it according to its plain language." *Corporate Executive Bd. Co. v. Virginia Dept. of Taxation*, 297 Va. 57, 75-76 (2019) (citing *Mathews v. PHH Mortg. Corp.*, 283 Va. 723, 738 (2012)).

As a preliminary matter, the COPN statute defines "clinical health service" as a "single diagnostic, therapeutic, rehabilitative, preventative or palliative procedure or series of such procedures." Code § 32.1-102.1. The SMFP defines "operating room" as "a room used solely or principally for the provision of surgical procedures involving the administration of anesthesia, multiple personnel, recovery room access, and a fully controlled environment." 12 VAC § 5-230-10. Even if there were ambiguity whether "service" as used in 12 VAC § 5-230-450(A)(2) could be interpreted to mean "operating room," regulations must be consistent with their governing statutes. *See Manassas Autocars, Inc. v. Couth*, 274 Va. 82, 87 (2007). Further, the SMFP regulations at 12 VAC § 5-230-450(A)(1)-(3) clearly differentiate between "service" and "room" in establishing utilization metrics that must be satisfied to demonstrate a public need for new open heart services. For example, while 12 VAC § 5-230-450(A)(2) contains a per-service utilization requirement, 12 VAC § 5-230-450(A)(3)

9

requires a COPN applicant to demonstrate its proposed new service would perform a specific number of procedures *per-room* during a given year of operation without reducing the utilization in existing open heart surgery services. (Emphasis added). Other provisions of the SMFP establishing the criteria and standards for open heart surgery services also distinguish between per-service and per-room utilization metrics. *Compare* 12 VAC § 5-230-460 (governing expansion of open heart surgery services; applicants must demonstrate that existing open heart surgery *rooms* meet specific utilization metrics) *with* 12 VAC § 5-230-470 (governing new pediatric open heart surgery services; applicants must demonstrate that existing pediatric cardiac catheterization *services* meet specific utilization metrics). Thus, "service" as used within 12 VAC § 5-230-450(A)(2) is unambiguous and does not mean "operating room." Accordingly, the Commissioner erred as a matter of law in misinterpreting that SMFP provision.

Next, CRMC contends that, because the Commissioner's interpretation of "service" within 12 VAC § 5-230-450(A)(2) was a substantive error of law, the lower courts were required to remand CRMC's application to the Commissioner for further proceedings, consistent with Code § 2.2-4029. Citing Code § 2.2-4027, CRMC asserts the VAPA does not permit the application of the harmless error doctrine for any type of error other than the agency's failure to observe required procedure. Here, the Commissioner's error was not an error of required procedure, but of the interpretation and application of a substantive SMFP provision. Additionally, CRMC maintains that the harmless error review set forth in Code § 8.01-678, which addresses appellate review of trials, does not apply to judicial review of agency actions, which are governed by Code § 2.2-4027, because the specific statute controls over a general provision addressing the same issue. *See Natrella v. Bd. of Zoning Appeals of Arlington Cnty.*, 231 Va. 451, 461 (1986).

Neither the Commissioner nor Sentara now argue that the Commissioner's interpretation of "services" and its application to the SMFP's utilization metric in 12 VAC § 5-230-450(A)(2) were correct. Instead, they assert that Code § 8.01-678 requires a harmless error review in all appellate cases, including those that arise under the VAPA.[4] Citing *Commonwealth v. Swann*, 290 Va. 194, 200 (2015), the Commissioner and Sentara emphasize that "Code § 8.01-678 makes 'harmless-error review required in *all* cases,'" and note its applicability in both civil and criminal cases. *See also Spruill v. Garcia*, 298 Va. 120, 127 (2019) (applying Code § 8.01-678 in a civil case). Additionally, the Commissioner and Sentara argue that Code §§ 2.2-4027 and 8.01-678 are complementary statutes, and should be interpreted to apply the harmless error doctrine to errors of law in cases arising under the VAPA.

We disagree with the contention of the Commissioner and Sentara that a harmless error review applies to all errors of law in cases that arise under the VAPA, based on the plain language of Code §§ 2.2-4027 and 4029. In issues of statutory interpretation, we seek "to effectuate the intent of the legislature as expressed by the plain meaning of the words used in the statute," and as such, the plain language controls, "unless the words are ambiguous or such application would render the law internally inconsistent or incapable of operation." *Llewellyn v. White*, 297 Va. 588, 595 (2019). Moreover, we assume the legislature chose its words with care when enacting a statute, and "'we are bound by those words.'" *Simon v. Forer*, 265 Va. 483, 490

---

[4] Both the Commissioner and Sentara argue that CRMC failed to preserve its first assignment of error for appeal. Specifically, they argue that CRMC failed to properly raise in the circuit court or in the Court of Appeals the issue of the applicability of the harmless error doctrine in agency appeals under the VAPA. Based upon a thorough review of the record, we conclude that this issue was adequately preserved for appeal.

(2003) (citing *Barr v. Town & Country Properties, Inc.*, 240 Va. 292, 295 (1990)).  "Courts are not permitted to rewrite statutes.  This is a legislative function.  The manifest intention of the legislature, clearly disclosed by its language, must be applied."  *Anderson v. Commonwealth*, 182 Va. 560, 566 (1944).

The plain language of Code § 2.2-4027 specifies that issues of law subject to court review include "(i) accordance with constitutional right, power, privilege, or immunity, (ii) compliance with statutory authority, jurisdiction limitations, or right . . . , (iii) observance of required procedure *where any failure therein is not mere harmless error*, and (iv) the substantiality of the evidentiary support for findings of fact." (Emphasis added).  The phrase "where any failure therein is not mere harmless error," only applies to procedural errors, and does not apply to any other error of law enumerated by Code § 2.2-4027, due to its location within the statute.  *See Alger v. Commonwealth*, 267 Va. 255, 259-60 (2004) ("Referential and qualifying words and phrases, where no contrary intention appears, refer solely to the last antecedent [in statutory construction].").

Here, Code § 2.2-4027 clearly distinguishes between administrative agency procedural errors and other errors of law, such as an agency's failure to comply with its statutory authority, and specifies that only procedural errors are subject to a harmless error review.  While the Commissioner and Sentara urge this Court to find that harmless error review under Code § 8.01-678 is applicable to all errors of law under Code § 2.2-4027, the plain language of Code § 2.2-4027 specifically limits the harmless error doctrine's applicability.  Under the rules of statutory construction, when one statute speaks generally on an issue and another addresses the same issue in a more specific manner, "the two should be harmonized, if possible, and where they conflict, the latter prevails."  *Virginia Dept. of Health v. Kepa, Inc.*, 289 Va. 131, 142

12

(2015) (citing *Virginia Nat'l Bank v. Harris*, 220 Va. 336, 340 (1979)). Code § 2.2-4027 applies to judicial review of administrative agency cases arising under the VAPA. In contrast, Code § 8.01-678 applies more generally to appeals arising from issues at trial. Given that Code § 2.2-4027 is specific to agency appeals and limits the applicability of the harmless error doctrine to procedural errors, we hold that the harmless error doctrine is not applicable to other errors of law in cases arising under the VAPA.

Our holding is consistent with prior decisions related to this issue. In *Browning-Ferris Ind. v. Residents Involved in Saving the Env't, Inc*., 254 Va. 278 (1997), we considered whether the Director of the Department of Environmental Quality ("DEQ") erred by failing to make an explicit determination before issuing a permit for a new solid waste management facility, as required by Code § 10.1-1408.1(D). We rejected the appellant's argument that the Director's failure to make an explicit determination was harmless error under then-Code § 9-6.14:17(iii) [now Code § 2.2-4027(iii)], noting that, "the statutory compliance issue involves a substantive provision which is a prerequisite to the issuance of a permit. Thus, the Director's action is not subject to harmless error review." *Id.* at 285. *See also Virginia Retirement System v. Cirillo*, 54 Va. App. 193, 202-03, n.2 (2009) (discussing the difference between substantive and procedural administrative errors, and the applicability of the harmless error doctrine only to procedural errors).

Here, the Commissioner was required by Code § 32.1-102.3(A) to determine whether CRMC's application demonstrated a public need by evaluating the project's consistency with the SMFP. The Commissioner was also statutorily required to consider the project's consistency with the SMFP under Code § 32.1-102.3(B). The Commissioner erred in interpreting and applying a provision of the SMFP at 12 VAC § 5-230-450(A)(2), which none of the parties now

13

dispute.  Further, the Commissioner's error was a substantive error of law because the Commissioner was required to evaluate CRMC's COPN application for consistency with the SMFP as a condition for approval.  *See* Code § 32.1-102.3(A).  Because this error of law was not the agency's failure to observe required procedure, *see* Code § 2.2-4027(iii), we hold that the harmless error doctrine was inapplicable, and the lower courts erred by failing to remand the case to the Commissioner for further proceedings, consistent with Code § 2.2-4029.[5]

CONCLUSION

For these reasons, we will reverse the judgment of the Court of Appeals and remand the case to the Commissioner to reconsider CRMC's COPN application consistent with the views expressed in this opinion.

*Reversed and remanded.*

JUSTICE McCULLOUGH, concurring.

I concur in the conclusion the majority reaches, that Code § 2.2-4027, while allowing for harmless error review for *procedural* defects, does not provide for harmless error review for *substantive* errors committed by administrative agencies.  The anomalous nature of this situation prompts some additional observations.

"The harmless-error check on judicial power has never been a begrudged limitation, but rather one 'favored' by Virginia courts," *Commonwealth v. White*, 293 Va. 411, 420 (2017) (citation omitted), because it stems from the "imperative demands of common sense," *Oliver v. Commonwealth*, 151 Va. 533, 541 (1928).  In nearly all appeals, the harmless-error statute, Code

---

[5] Because of our holding on CRMC's first assignment of error, we need not address CRMC's second assignment of error, which related to whether the Court of Appeals erred in deferring to the Commissioner's interpretation of the Board's regulations.

14

§ 8.01-678, "puts a limitation on the powers of this court to reverse the judgment of the trial court — a limitation which we must consider on every application for an appeal and on the hearing of every case submitted to our judgment." *Walker v. Commonwealth*, 144 Va. 648, 652 (1926) (construing predecessor harmless-error statute).  The idea of harmless error has deep roots in the common law.  John M. Graebe, *The Riddle of Harmless Error Revisited*, 54 Hous. L. Rev. 59, 66 (2016).  It prevents appellate courts from turning into "impregnable citadels of technicality."  *Kotteakos v. United States*, 328 U.S. 750, 759 (1946) (quoting Marcus A. Kavanagh, *Improvement of Administration of Criminal Justice by Exercise of Judicial Power*, 11 A.B.A.J. 217, 222 (1925)).

Yet, for reasons that are not clear, uniquely with administrative law appeals, the General Assembly has limited harmless error review to procedural defects.  The absence of a harmless error review in administrative cases is striking.  In civil and criminal trials, even errors "arising from the denial of a constitutional right are subject to a harmless error analysis." *Angel v. Commonwealth*, 281 Va. 248, 264 (2011).  It is not clear why, in appeals from administrative agencies, harmless error is available for procedural errors, but not for substantive errors.  Virginia is an outlier in this respect.  I am aware of no other state that provides such a limitation.[1]  Judicial review of the decisions of federal administrative agencies contemplates the applicability of harmless error across the board.  *See* 5 U.S.C. § 706.  Litigation, including in the

---

[1] *See, e.g.*, *Ferguson v. Hamrick*, 388 So. 2d 981, 984 (Ala. 1980); *Williams v. Dep't of Public Safety*, 369 P.3d 760, 782 (Colo. Ct. App. 2015); *Levy v. Comm'n on Human Rights & Opportunities*, 671 A.2d 349, 358-59 (Conn. 1996); *Sherman v. Comm'n on Licensure to Practice Healing Art*, 407 A.2d 595, 602 (D.C.A. 1979); *Sylte v. Idaho Dep't of Water Resources*, 443 P.3d 252, 260 (Idaho 2019); *Comm'r of Indiana Dep't of Insurance v. Schumaker*, 118 N.E.3d 11, 20 (Ind. Ct. App. 2018); *Southwest Kansas Royalty Owners Ass'n v. State Corp. Comm'n*, 769 P.2d 1, 12 (Kan. 1989); *Vote Solar v. Montana Dep't of Public Service Regulation*, 473 P.3d 963, 975 (Mont. 2020).

administrative context, can be extraordinarily expensive and time consuming. A remand to revisit a decision when the error was plainly harmless drives up the cost of litigation with no apparent gain.

Public policy choices, of course, remain entirely the prerogative of the General Assembly. *Transparent GMU v. George Mason Univ.*, 298 Va. 222, 250 (2019). To the extent the placement of the harmless error language in Code § 2.2-4207 was an oversight, it may be worth correcting.